McKiNNEY, J.,
delivered the opinion of the Court.
This was, in form, an action of debt brought by Morrow against Queener, for money had and received to the use of the plaintiff. Judgment for the plaintiff. The cause of action is this: In January, 1853, perhaps, a trunk, containing about twenty-five hundred dollars in bank notes, was feloniously taken from the dwelling-house of the plaintiff, by some person, or persons, unknown. It is assumed for the plaintiff that the defendant procured two slaves to commit the felony, or, that he actually received the contents of the trunk from them, *125 knowing the same to have been stolen. The questions arising in the case are mainly questions of evidence :
First. One of the slaves, named “ Gosh, ” was owned by the defendant, and at the time of the felony, was in the plaintiff’s service; the other slave, named “Ban,” belonged to William Carey.
The defendant was, afterwards, subjected to a search, at the house of William Carey. Several persons were present, and among others, the slave “Ban.” Buring the search, the slave Ban, said, that Queener “got him and Gosh, ” to steal the trunk. This was denied by Queener. Ban also stated, that “ Queener talked to him in the field:” this was also denied. Ban said to Queener, “you know you came to me in the field, and hitched your horse to the peach-tree, and ho broke loose twice, and was tramping the ground, and I told you master would be mad.” ’ To this, Queener replied, that “ he was in the field, but was not talking about Morrow’s money!” All the foregoing statements of the slave were objected to, and so far as they were denied by Queener, were excluded; but the isolated admission of defendant, that “ lie was in the field, ” was allowed to go to the jury.
It is insisted, that this admission of the defendant was improperly received, on the ground, that taken by itself, and disunited from the statement of which it formed a part, it proved nothing, and therefore was irrelevant.
This question, in the aspect which it is presented, is not altogether free from difficulty. The question whether it was admissible at all, must not be confounded with the very different question, -whether it was admitted under proper x’estrictions.
*126 The general rule is, that the relevancy of evidence is a question for the Court. This rule excludes evidence of collateral facts, which are incapable of affording any reasonable presumption, or inference, as to the principal fact or matter in dispute. The objection is, that it tends to mislead the jury from the true point in issue, and to excite prejudice: 1 Greenleaf’s Ev., sec. 52. But it is required that tire evidence should bear directly upon the issue. It is admissible, if it tend to prove the issue, or constitute a link in the chain of proof: Ibid., sec. 51. The rule is often one of difficult application — a particular fact, seemingly irrelevant, may have such relation to, or be so connected with other facts, more or less directly, as when taken together, to furnish some just ground of presumption, or inference, in respect to the main fact in issue. The application of the rule, must, therefore, depend upon the circumstances of each particular, case.
Upon the hypothesis that the defendant procured the tioo slaves to steal the money, or, afterwards receive it from them, knowing it to be stolen, the fact that ho was in company, or ever had an interview with Dan, under the circumstances stated, cannot be said to be irrelevant to the issue.
It may be possible, as suggested, that by a misapprehension of the instruction on the part of the jury, or a wilful disregard of it, the defendant may have been as much prejudiced by the reception of his bare admission, that he was in the field with Dan, as he could have been by admitting the whole statement of the slave. The statement having been heard by the jury, and one part of it being confessed by the defend *127 ant, to be true; they may have treated this admission as confirmatory of the entire statement. This, however, is mere conjecture. In the practical administration of justice, it will not do to assume, that the jury either misapprehended or disregarded the instructions of the Court, unless the verdict demonstrate the fact to be so, by being repugnant thereto,' neither can it be assumed, that the jury were influenced by testimony that was excluded or withdrawn from their consideration, unless such conclusion be forced upon the mind by the fact, that there was no legal evidence before them upon which their verdict could possibly have been based.
The case should have been considered by the jury, as if the rejected evidence had not been heard. And it is certainly to be regretted that it was heard, being palpably illegal, inasmuch as it was not in the power of the Court, by its rejection, to efface the impression it was likely to make upon minds unaccustomed to the judicial process of nicely analyzing and weighing evidence ; nor is it reasonably expected that jurors, however honest and well meaning, will always be able to ignore an impression so likely to sink deep into their minds, and unconsciously, perhaps, influence their action. But, still, this is one of-» the practical evils of our trial by jury, for which, in most cases, there is no remedy. The jury might have been cautioned, more particularly, perhaps, against the influence of the rejected testimony; but this was not asked for.
Second. The next error assigned, relates to the admissibility of the declarations of the wife of the defendant, for the purpose of fixing liability upon him in this action.
*128 The witness, Mrs. Hart, states in substance, that she was passing the residence of defendant, and Ms wife asked her to stop. .Mrs. Queener was sweeping, and said her husband had been abusing her, to make her give up that money — she had a roll in her hand as large as her wrist — and said it was Morrow’s money. “ The defendant toas at the other door, and said, what’s that.”
Witness, McKee, stated, that, in a quarrel between the defendant and his wife, in the presence of witnesses, Queener said he would leave her. She said if he did, she knew something on him that would put him in the Penitentiary; would tell Mr. Morrow about it, and put everything in his hands. Witness did not “recollect what Queener said,” in reply.
Witness, Nancy Roach, stated, among other things, that on one occasion, she saw a roll of money in Mrs. Queener’s possession. She had it spread out on her lap, in the smoko house, counting it. When she saw witness, she wrapped it up, and put it in her bosom. This was in the absence of defendant, it seems.
Upon the admission of the foregoing evidence, several questions are made:
1st. It is assumed as a corrollary from the rule which excludes husband and wife from being a witness in a cause, civil or criminal, in which the other is a party, that the statements of the wife were inadmissible; and further, that, from the very nature of the relation between the parties, the husband was not called upon to contradict, or even to notice, the criminations of the wife. These distinctions, though plausibly maintained in the argument, are not sound. In Phillips on Ev., 81, it is laid down, correctly, as we think, that a “discourse *129 between husband and wife, in presence of a third person, may be given in evidence against the husband, like any other conversation in which he may have been concerned.”
This must necessarily be so, and the general rule, which excludes the wife from being a witness against her husband, is not infringed in its spirit, in such case. The statements of the wife are not received, or treated, as evidence against the husband, but merely as inducement to the responsive admissions, declarations, or acts of ■ the husband at the time. Except for this purpose, the statements of the wife are of no effect;
The general rule, is, that an admission may be presumed, not only from the declarations of a party, but even from his acquiescence, or silence: 2 Stark’s Ev., 37; 1 Phillips on Ev., 107. The force and effect of such an admission must, of course, depend upon the circumstances under. which it was made. In some cases, if clearly proved, it will be evidence of the most convincing kind; in others, it may be of very little force, and, perhaps, entitled to no consideration: 1 Phill. on Ev., 107. And it is always to be borne in mind, that it is the most dangerous kind of evidence: 1 Greenleaf’s Ev., secs. 199, 200. In order that a party may be affected by the statement of another, on the ground of his implied admission of its truth, by silent acquiescence, it must distinctly appear that he heard, and fully understood, such statement: 3 Phill. on Ev., note 191. The occasion must, also, have been such, that the party sought to be affected, was at liberty to interpose a denial of the statement; and he must not only have had the opportunity to speak, but the statement must have been in respect to some *130 matter, directly affecting his rights, so as properly and naturally to demand a contradiction, if untrue: Ibid, 1 Greenleaf’s Ev., secs. 197-199. A distinction has been taken, in some of the books, between a statement made by a party interested in the matter, and a mere stranger, or one having no interest. “What is said by a party in interest to the other, without contradiction, is admissible evidence, but what is said by a stranger may not be so. It may be impertinent, and best rebuked by silence, but if it receive a reply, the reply is evidence: 1 Greenleaf, sec. 199.
Our conclusion on the first point, is, that the statements of Mrs. Queener were not inadmissible, on the ground, merely, of her relation as wife, of the defendant.
2d. The next objection, is, to the admission of Mrs. Hart’s statement. The ground of the objection is, that it does not appear that the defendant heard, and understood, the statement of the wife. The witness says that the defendant, at the time the statement was made, “was at the other door, and said, ‘What is that?”' This interrogative reply was certainly equivocal. We have seen that it is indispensable, that the party should have heard, and understood, the statement, and if this be doubtful, the fact may be determined by the jury: 3 Phill. on Ev., note 191, page 194.
It does not appeal that this specific objection was urged on the trial; and in the state of the record, we must take it, that the fact- was properly referred to the j^y.
3d. The third objection, is, to the competency of McKee’s testimony. This witness “did not recollect what Queener said, ” in reply to his wife’s statement.
*131 The argument upon this point assumes, that the statement is not admissible, unless replied to, and that the inability of the witness to relate what was said by the defendant, was equivalent to no reply. We do not assent to the correctness of this position. If the statement be competent, and proper in other respects, it is unimportant, so far as respects its admissibility, whether it be responded to at all. It is from the silence of the party, when called on to spealt, that the presumption arises against him.
The testimony of Nancy Roach, as to seeing a “roll of money” in the possession of Mrs. Queener, was certainly inadmissible. This, as it seems, was in the absence of the defendant,- and, so far as we can see from the record, he had no participation in the act. And it clearly falls within the rule which excludes the acts and declarations of the wife as evidence against the husband, if made in his absence, or without his authority, express or implied. But this objection, we think, was obviated by the charge, which, as we understand its import, excluded, generally, all evidence of this nature.
The next error, is, admitting the plaintiff himself, as a witness, on the trial.
The felonious taking of the trunk having been proved, and the evidence tending to fix liability on the defendant having been heard, the plaintiff was admitted to prove the simple fact, that the trunk, when stolen, contained twenty-five hundred dollars in bank notes, being unable-, by any other evidence, to establish this fact.
In this, we think, there is no error. There seems, at this day, to be no serious question in regard to the correctness of this practice, in cases where the party against *132 whom it is offered, has been guilty of a felonious, fraudulent, or other tortious and unwarrantable act of inter-meddling with the plaintiff’s goods, and no other evidence can be had of the amount of damages: 1 Greenleaf’s Ev., sec. 848-850. Such evidence is admitted, not solely on the. ground of the odium of the law against spoliation, but because, from the nature and necessity of the case, no other proof, in most instances, can be had.
Whether the principle is applicable to cases of a criminal or tortious character, we are not called on now to determine. It may not be improper, to remark, however, that it is difficult to perceive any substantial ground of distinction between cases of negligence, and cases involving crime or fraud, so far as the question of the admissibility of the plaintiff’s evidence, is concerned: 1 Greenleaf’s Ev., Id., note.
4th. This brings us to consider the last error assigned upon the record.
The question arises upon the following state of facts: Mary Masingo, and her sister, Mrs. Chapman, were examined, on the trial, as witnesses for the plaintiff. Their credit was assailed on the other side, by proof that they were profligate women — not entitled to credit, on oath, from their general reputation — and, also, by proof of previous contradictory statements. In confirmation of their testimony, on the trial, the plaintiff was permitted to offer evidence of their statements, made subsequent to the contradictory statements against them on the other side, and under the following circumstances: These two women had been prosecuted by the plaintiff, for receiving part of the same money alleged, in the present case, to have been received by the defendant. They were con *133 fined in prison upon this charge, during the pendancy of the present action. It seems that the, plaintiff had visited them in the prison, for the purpose of procuring from them a statement, to be used as evidence in the present case. Afterwards they were approached by others, on behalf of the plaintiff, and were induced to make a disclosure of all the facts within their knowledge, as is alleged, in respect to the money received by them. There is some obscurity in the evidence, in regard to the negotiations carried on with those women, in order to draw a statement from them. But enough appears to warrant the conclusion, that before making any disclosure, they were probably induced to hope and believe that upon doing so, the prosecution against them would be dismissed; and it was, in fact, dismissed before the trial of this case. These statements, thus, elicited, are the confirmatory declarations of the witnesses, offered and admitted to go to the jury, to support their credit. The evidence was objected to, but the objection was overruled.
It seems that ever since the time of Lord Mansfield, the former consistent statements of a witnéss, to rebut his contradictions, are rejected by the English Courts, except in a very few particular cases: 3 Doug. R., 242, though formerly it had been held otherwise by some of the authorities. It is laid down, in Starkie on Ev., vol. 3, p. 1758, that former statements of a witness impeached, are not admissible for the purpose of confirmation, “except in particular instances, where the statement was made at a time when the witness labored under no interest, or influence, to misrepresent the fact.” See, also, Starkie, 148; 1 Phill. on Ev., 307; 1 Greenleaf, sec. 469.
*134 This rule has been departed from by several of the American Courts: See 3 Phill. on Ev., (Ed. of 1843,) note 533, pp. 776, 778, where the cases are referred to. Some of these cases go the length of holding, that such evidence is admissible wherever the witness is sought to be impeached by reason of contradictory statements, and others would seem to carry the doctrine still further. The case of Dossett vs. Miller, 3 Sneed, 72-76, sanctions the principle, that evidence of previous consistent statements is admissible, in all cases, where the testimony of the witness, given in Court, is sought to be impeached by proof of contradictory statements.
The facts upon which the question arose in the latter case, are not stated. The abstract principle announced, we are not disposed to disturb; but this principle, as intended to be understood by this Court, lias been misapplied in the case now before us.
The reason for rejecting confirmatory evidence of. former declarations, according to some of the English authorities, is the seeming incongruity of holding, that' a representation without oath, can be any confirmation of a statement upon oath. But there would seem to be some show of reason in the doctrine, that where it was attempted to establish that the statement on oath is a fabrication of recent date, or where a design to misrepresent, from some motive, is imputed to the witness; or where it is sought to destroy his credit, by proof of contradictory representations; evidence of his having-given the same account of the matter, at a time when no motive or interest existed, and no influence had been brought to operate upon him to misrepresent the facts, ought to be received, because it naturally tends to inspire *135 increased confidence in the truth of the sworn statement. To this extent, we think, the principle is reasonable and just. But to allow consistent statements, for the purpose of giving support to the credit of the witness, made after the contradictory representations by. which it is sought to impeach him, would be to put it in the power of every unprincipled witness to bolster his credit, and, perhaps, escape the just consequences of his own falsehood and tergiversation; and it would be still worse to hold that the statement of an arraigned felon in vineulus, offered, perhaps, as a bribe, to procure his discharge, and made after the contradictory statement proved against him, and at a time when he was laboring under the strongest possible motives to misrepresent the facts, might be received. This cannot be allowed, because of its direct tendency to corrupt the administration of justice, as well as the inherent absurdity of such a practice.
We hold, therefore, that the confirmatory evidence was improperly received, and on this ground, alone, we feel constrained to reverse the judgment.