LYNN A. HAYES v. A. C. LEWIS et al.

Eastern Section. ——— —, ——.

Kennerly & Key, of Knoxville, for appellant.
A. E. Mitchell, of Knoxville, for appellee.

SNODGRASS, J. The bill in this cause was filed against the Building Committee of the Oakwood Methodist Church, its trustees and against the Fidelity Trust Company and its trustees M. D. Arnold and J. Harry Price; also the Board of Home Missions and Church Extension of the Methodist Episcopal Church. Its object was

to collect a balance of $857.73 claimed as a balance due the contractor complainant Lynn A. Hayes for the building and completion of the church, under a contract with its building Committee. The defendant Home Missions had a previous mortgage on the church, lot, etc. which had been made subordinate to that of the Fidelity Trust Company which had advanced money for the completion of the church, and had taken a mortgage or trust deed securing the same dated June 9, 1926, and disbursed the funds in payment to the contractor and in the settlement of bills—for materials, etc. etc.

The contract for the construction of the house was made on May 26, 1926.

The bill alleged that the house was completed and turned over and accepted by the building committee on January 5, 1927—except for installation of plumbing and heating plant. The contract price was $19,850—providing terms for extras and changes which might affect it and the bill set out items aggregating the sum sued for as cost of changes, extras, etc., and as balance still, it was alleged, due and unpaid, and it sought to enforce a lien upon the property, that was described in the bill, which it alleged existed, the other parties being made parties as having mortgages against the property—and praying for attachment which was issued.

There was a joint answer of the building committee and trustees of the church. It admitted the relationship of the parties as alleged; the contract for the building of the church according to plans and specifications for the price alleged and that the church was completed and turned over as alleged—the answer continued:

"It is true that there were a number of minor changes made from time to time in the plans and specifications by virtue of which in some instances extras or additions were added to the original contract and in other instances some amounts were deducted from the original contract for said changes." But it was insisted that "The contract and specifications under which complainant was working provided that all work done and labor furnished was subject to inspection and control of the architect in charge and that all changes were to be made with the knowledge and approval and consent of said architect."

It was admitted that it might be true that there was a small balance of upwards of $48.74 due under the original contract price as averred in the original bill, but it was denied that there was a bill of $39.35 for additions to the church steps—as it was insisted the specific plans and specifications called for the steps as completed.

It was admitted that there was a small change made in the pulpit as averred in chapter 5, subsection 3, probably amounting to $20.31.

It was admitted that there was a change made in the installment of a toilet on the second floor and that complainant probably used ten extra pieces of timber as averred in chapter 5 of the original bill subsection D.

It was denied that there was anything due for tearing out of closets in the vestibule of said church adding six feet to its width as claimed in subsection E 5, in sum of $8.74. They claimed to be not advised as to the claim of $35 for changing location of electric meter as fixed by the plans and specifications as indicated in section F, and neither admitted nor denied the same.

It was denied that they were indebted as claimed in subsec. H of Chapter 5, being an item of $41 for placing of an extra roof on tower not called for or specified in the plans including material and labor.

And it was denied that complainant was indebted in the sum of $629 or in any other amount for placing of art glass in the main auditorium of the Church as alleged.

Regarding this latter it was insisted that the plans and specifications which were submitted to complainant prior to the execution of the contract and on which complainant made his bid on said work—provided for glass in the auditorium of said church to cost $1.50 per square foot, which, it was averred, was the cost of a good grade of art glass and it was represented that complainant breached and violated his contract touching the installment of said glass and that respondents had only recently been advised and learned that the glass installed by complainant in said church was not of the grade, class or price provided for in said plans or specifications and that complainant instead of furnishing the glass at $1.50 per square foot as called for in the plans and specifications furnished a cheaper inferior grade of glass which cost complainant $1 per square foot and it was claimed that complainant did not come into court with clean hands—on a contract which he himself had breached and that complainant is in reality and in justice and equity indebted to respondent trustees of said church for the difference in the value of the glass furnished and the glass called for in said plans and specifications; and that the amount of which was far in excess of the minor extras and the balance due to said complainant, and respondents plead said matters as a set-off against any claim whatsoever which might be due for alterations, changes, additions or the small balance on said original contract.

It was also claimed that complainant had already receipted the Fidelity Trust Company in full for labor, claims and material and had precluded and estopped himself and was now precluded and estopped from averring that there is any indebtedness due to complainant on any account from these respondents, and it was denied

that the changes were made on the knowledge and consent of the Building Committee, and it was averred that all changes which were made were made under the supervision of the architect.

It was denied that complainant in submitting his bill figured only art glass in the transoms near the pulpit as averred and it was insisted that the plans and specifications from which .complainant figured his said bill provided for $1.50 per square foot for said glass as already shown, and it was denied that they were indebted for roof on the 'tower—and it was averred that they were entitled to several credits on account of the changes made and the right was reserved to show what credits respondents would have in any event.

It was admitted that the Board of Home Missions and Church Extension held a valid mortgage for $25,000 against the property, which had been subordinated to the indebtedness of the Fidelity Trust Co. and it was averred that complainant on closing said loan said last named Company executed a release and receipt in full against said property and had thus precluded and estopped himself and was now precluded and estopped to assert any lien against said property in any event.

It was admitted that the trust deed to Arnold & Price Trustees had been executed as alleged and it was claimed that complainant had been paid in full from the proceeds of the loan, and it was denied that complainant had any lien against the property. The allegations of chapter 10 were denied as were all other allegations not admitted, modified or denied.

The answer of the Board of Home Missions and Church Extension of the Methodist Episcopal Church was filed claiming the benefit of its mortgage, which it says had been subordinated to that of the Fidelity Trust Company, and denying that Complainant had any rights superior to those claimed by it.

The answer of the Trust Company admitted the contract of Complainant and the trustees of the church but denied that Complainant had any rights or liens against said property for labor or materials furnished for said building; except according to its information it was admitted that there was due a balance of approximately $48.71 on the contract price. It was denied that the complainant had any lien against said property to secure any other or further sum; and it was denied that complainant's lien to secure this sum had priority or was superior to the trust deed to defendants Arnold and Price, trustees of the trust company. In which connection it was averred that at the time of the execution of the contract or during the prosecution of the work the complainant executed in writing a waiver of all liens against said property in favor of these defendants for the protection of this said trust deed, which was plead as an estoppel against him to assert any superior claims and further it was claimed that pay-

ments from time to time were made through the office of the Fidelity Trust Co. and by said defendant; that said Beauman & Beauman, the architects in charge, presented a final estimate for settlement with complainant Lynn A. Hayes, which estimate was OK'd by the Building Committee of the church and endorsed as is customary in such cases by the complainant Lynn A. Hayes, and that said Lynn A. Hayes had thus precluded and estopped himself and was now precluded and estopped to say that there is any other or further sum than $48.71 due to him on account of said work; whereupon all other allegations of the original bill not already admitted modified or denied were then generally denied. Such were the issues upon which proof was taken and the cause heard before his honor; who in his decree made a finding of fact, as follows: (omitting only the description of the property which is likewise described in the bill).

"This cause came on to be further and finally heard upon this 26th day of February, 1929, upon the original bill, the answers of the defendants, the proof on file and the entire record at large, from a consideration of all of which the court is of the opinion and doth find and decree as follows:

"1. That on the 26th day of May, 1926, the complainant entered into a written contract with the defendants, J. B. Cox, W. R. Anderson, P. P. Mynatt, M. A. Scarborough and A. C. Lewis, who composed the Building Committee of the defendant Oakwood Methodist Episcopal Church, by the terms of which the complainant undertook to erect a church edifice upon the lot owned by said church, the title to which is in the name of B. D. Lewis, W. H. Russell, Henry Dowell, P. P. Mynatt, H. L. Beeler and G. W. McDaniel, as Trustees of said church, who are the legal custodians of all the real estate and property of said church congregation under and by the terms of the laws and discipline of said church. The lot upon which said church building was to be erected is described as follows: . . .

"2. That complainant, pursuant to said contract, entered upon the prosecution of said building and completed the same in strict accordance with the terms of said contract and the specifications and details incorporated therein, completing said building on or about January 5, 1927, and said building was accepted and occupied by the defendant owners.

"3. By the terms of said written contract the complainant was to be paid the sum of $19,850 for the completion of said church edifice. In the course of the construction, this contract price was increased by $650, which represented the cost of installing an iron beam in said edifice, which was not specified and required in the plans and specifications and contract aforesaid. Complainant has been paid the sum of $20,451.29

on account of the original contract price and said extra aforesaid, leaving a balance due him of $48.71.

"4. In the presecution of the building of said church edifice, the complainant, with the knowledge of the members of said building committee and of the trustees of said church, installed and erected'in said church edifice a number of changes and additions not provided for in the plans and specifications and contract therefor, these changes and extras, and the actual cost thereof to the complainant, being as follows:

"(a) An addition to the entrance steps of said church edifice, including the erection of buttresses and a concrete walkway from the church steps through the yard to the property 1ᴵᵉ ᵉ, costing the complainant the sum of $94.36.

"(b) Additional work and material required to be used in a change in the pulpit of said church, costing the complainant the sum of $20.31.

"(c) Additional material and labor required in changing the second floor preparatory to installing a toilet, costing the complainant the sum of $16.15.

"(d) Change and addition incident to tearing out of closets in the vestibule, thereby adding to the width of said vestibule, and requiring additional labor and material, costing complainant $8.74.

"(e) Material and labor required in changing location of water meter from the place fixed in the plans, specifications and contract, costing complainant the sum of $35.

"(f) Material and labor used in placing an extra roof on the tower of said church edifice, costing complainant the sum of $41.

"(g) Cost of art glass used in the main auditorium of said church building, costing the complainant the sum of $600.

"The total actual cost of said extras and additions to the complainant was $864.27 ($815.56).

"5. That in the installing of said changes and extras, there was a saving to the defendants—that is, the complainant was not required to do certain work originally contracted for, these items and the reasonable cost thereof and the credit to which the defendants are entitled to on account thereof, being as follows:

"(a) Reasonable cost of two closets required by the plans, specifications and contract to be installed in the vestibule of said church, which were not installed, $39.10.

"(b) 1500 feet of lumber saved in placing the roof on said church edifice, $30.

"(c) Cost of double strength American sheet glass provided in the specifications to be installed in the main auditorium, but which was not used, $20.

"(d) Cost of art glass to be used in transoms, which was not used, $12.

"These credits amounting to $109.

"The court further finds that the reasonable charge by way of profit for supervising and overseeing the installation of the foregoing extras and alterations is ten per cent of the actual cost of the complainant of installing and erecting said extras and alterations.

"6. The court further finds that under the terms of said contract it is provided that "no work shall be considered as extra unless a separate estimate, in writing, for the same shall have been submitted by the contractor to the architects and the owner, and their signatures obtained thereto," and that said contract provides further as follows:

"It is also further agreed that the said parties of the first part may make any alterations by adding, omitting or deviating from the aforesaid plans, drawings and specifications, or either of them, which they shall deem proper, and the said architect, shall advise, without impairing the validity of this contract; but the difference shall be added to or deducted from the amount of the contract, as the case may be, by a fair and reasonable valuation, herein agreed to, but should any dispute arise respecting the true value of any extra work, or works omitted by the contractor, the same shall be valued by two competent persons, one employed by the proprietor and the other by the contractor, and these two shall have the power to name an umpire, whose decision shall be binding on both parties. It is further agreed that in case any difference of opinion shall arise between said parties in relation to the contract, the work to be performed under it, or in relation to the plans, drawings and specifications hereto altered, the decision of Albert B. Bauma Architect, shall be final and binding on all parties hereto."

"In respect to all the additions and alterations sued for in this case, the court finds that no estimate in writing was submitted by the contractor and the signatures of the architect and the owners obtained thereto. In regard to the item claimed for art glass used in the auditorium, the court finds that the architect ordered the complainant to install art glass, and that complainant did so under protest.

"All the other changes and alterations were made by complainant, with the consent, acquiescence, and upon the request of some member of the Building Committee of said church or the pastor thereof.

"The court is of the opinion that the decision of the architect in requiring the complainant to use art glass, and in

declining to certify and allow the complainant the reasonable cost of the extras and alterations installed in said church edifice is final, and is not subject to review by the courts.

"7. It is therefore ordered, adjudged and decreed by the court that the complainant, Lynn A. Hayes, have and recover of the defendants, A. C. Lewis, J. B. Cox, W. R. Anderson, P. P. Mynatt and M. A. Scarborough, constituting the Building Committee of the Oakwood Methodist Episcopal Church of Knoxville, Tennessee, and of B. D. Lewis, W. H. Russell, Henry Dowell, P. P. Mynatt, H. L. Beeler and G. W. McDaniel, as trustees of said church, the sum of $48.71, together with all the costs of this cause, for which let execution issue.

"Said judgment is hereby declared to be a lien upon the real estate described herein, and it is further ordered that, unless the judgment herein allowed complainant is paid within thirty days from the entry of this decree, the Clerk and Master of this court will sell said property, after advertising the same according to law, to the highest and best bidder, upon the terms of one-fourth cash, and the balance at six, 12 and 18 months, taking notes for the deferred payments with personal endorsements approved by the Clerk and Master, and retaining a lien upon said real estate to further secure the said deferred payments. Said sale will be made subject, however, to a mortgage executed about September 7, 1923, securing to the defendant, Board of Home Missions and Church Extension of the Methodist Episcopal Church, the sum of $25,000, and also subject to a deed of trust executed to the defendants, M. D. Arnold and J. Harry Price, trustees, securing an indebtedness to the defendant Fidelity Trust Company of $22,000.

"The Clerk and Master will report his action in the premises as soon as practicable, and until the incoming of said report, all other matters are reserved.

"To the action of the court in not allowing a recovery of the full amount sued for, the complainant Lynn A. Hayes excepted, and now excepts and prays an appeal to the next term of the Court of Appeals sitting at Knoxville, which appeal is granted, at this stage of the proceeding, the court exercising its discretion in that regard, and complainant is allowed ten days within which to perfect said appeal by giving an appeal bond or otherwise complying with the law.

"In case said appeal is perfected, the Clerk and Master will transmit all exhibits to the appellate court in their original form, without copying the same into the transcript.

"On motion of Kennerly & Key, solicitors for complainant a lien is declared in their favor upon the aforesaid recovery to secure their reasonable fees for services rendered herein.

Perfecting his appeal the complainant has made four assignments of error as follows:

1. "That the chancellor erred in not awarding complainant a decree for the full amount sued for, to-wit: $857.83, together with interest thereon since January 5, 1927, and decreeing that complainant was entitled to a lien upon said church building and the lot of ground upon which it stands to secure the payment of said decree.

2. "The chancellor erred in holding, adjudging and decreeing that the decision of the architect in failing and refusing to allow and certify for payment to the complainant the reasonable cost of the extras and alterations installed by the complainant in said church edifice, was final and not subject to review by the courts, and in disallowing the complainant a recovery upon that ground.

3. "The chancellor erred in not decreeing that the lien of the complainant for the balance due him for the erection of said church edifice was prior and superior to the deeds of trust in favor of the defendants Fidelity Trust Company and Board of Home Missions and Church Extension of the Methodist Episcopal Church.

4. "The chancellor erred in not granting the alternative relief prayed for in the bill and permitting the complainant to remove from said premises enough of the material and supplies used by him in the construction of said church edifice to satisfy the recovery sought in this case."

We cannot agree entirely with the learned chancellor's disposition of the case. While it may be true that had the contract been literally pursued, and the defense shaped with a view to interposing any technical defenses to the just disposition of the case the view taken by the chancellor denying a recovery for all meritorious claims save one, might have been supported. But the parties have not themselves so dealt either with the contract or the pleadings as would prevent the disposition of the case on its merits. While the chancellor found in favor of practically all the claims asserted by the bill, he yet found an insuperable barrier in the contract against a recovery for all save one, and that was a confessed liability for $48 due under the original contract, notwithstanding complainant had endorsed the certificate ex. no. 8 to Price's deposition with a statement that it was a settlement in full.

It was known to all that it was not a settlement in full; that at least the sum conceded was still due and it must also have been known that complainant had not been paid for the changes that had been ordered or at least made at the direction of some one in authority; for it is not to be presumed, that work put up, and partly finished, and not complained of as out of harmony with the

plans and specifications would have been deliberately torn down and replaced with changes and other construction at the great expense of complainant. Indeed while another item of change and expense that of $20.31 for extending the stage or pulpit was admitted by counsel for defendants as a proper change that had not been settled for, there was no sincere or tenable defense offered to any other item unless indeed it was as to a change of $41 for roofing the floor of the belfry. We are not satisfied that complainant was entitled to charge for this item, for whether it be called a roof or merely a protection against the rain, it appears from the testimony of the architect that a workman-like job, to protect the building against the damage from rain beating in, would have been a general specification covering the protection of such an exposed portion against leakage resulting in damage. We are not at all impressed however with the right asserted by the architect to interpret or construe specifications, directly contrary to the terms in which they were written. While, however, divergence of opinion, under the terms of the contract was to be finally determined by the honest judgment of the architect, in all matters presented to him, the contract gave him no power to change its material terms; nor can it be held, like the laws of the Medes and Persians unalterable. It was perfectly competent for the parties during the progress of the work to waive any preliminary route to liability and effect changes by agreement and this is what they really did; that every one of these changes as the chancellor found was made with the knowledge and asquiesence of those in authority and at their instance cannot be doubted.

It would therefore operate fraudulently to allow them to receive the benefits of such changes, and claim immunity because the contract had not been strictly or formally observed in arriving at agreements respecting such changes. To prevent that the court will give the contract such construction as the parties have given it and estop them from asserting otherwise. The architect's attempt to force a contribution of something like $600 in requiring complainant to put in art glass, where the specifications in more than one detail indicated a different and cheaper glass upon which complainant figured in making his bid smacks more of an effort to protect himself in his own mistake in draughting the plans and specifications than otherwise, whether the mistake was made by him or some one in his office.

If it was a mistake, it was made and an unambiguous specification written in and cannot now be corrected by any construction to the detriment of the complainant nor do we think he is at all estopped by whatever he may have said to Lewis (not Mynatt) regarding his agreement to stand for art glass if others had bid on the contract with the understanding that it was to be art glass. If he

had such conversation with Mr. Lewis, it was at a time when the liability had already been increased and being without consideration was not binding upon him; nor was his endorsement of the last certificate (no. 8) paid by Price with the statement "in full" indicating a final settlement binding for the same reason; nor, effecting no injury or producing no change to any one's .detriment, could it estop him from claiming that there-was more due if in fact it was due.

We are of opinion that the pleadings were set for a disposition of the case on the merits; nor has any fact intervened. that would prevent that result. The decree denying the recovery for the other items claimed, except as to the $41 for roofing, will be reversed and a decree will be entered here embracing them, with said exception. The item for glass will be $600, instead of $629 as claimed, the $29 being included as a contribution by the merchants. The aggregate sum will be credited by the $190, as saving, and the ten per cent will be calculated upon the sum after so giving the credits and minus also the $48.71 due under the original contract.

A lien will be declared upon the property subject to the mortgages as the chancellor found for the amount recovered here and the property will be sold to satisfy same as provided in his decree with the modifications indicated, and the cause remanded for such purpose.

Defendants trustees for the church will pay the costs accruing in this court and remainder as adjudged by the chancellor.

Portrum and Thompson, JJ., concur.