**BUNGE CORPORATION, a New York corporation, Plaintiff,**

**v.**

**Charles MILLER, Defendant.**

**Civ. No. C-73-249.**

United States District Court,
W. D. Tennessee, W. D.

Feb. 27, 1974.

John L. Warner, Jr., Union City, Tenn., for plaintiff.

William W. Dunlap, Jr., John H. Harris, Jr., Chandler, Manire, Harris & Shelton, Memphis, Tenn., for defendant.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

In this cause plaintiff, Bunge Corporation, sues defendant, Charles Miller, a West Tennessee farmer, for breach of contract, alleging that Miller failed to deliver 8,305.68 bushels of the 10,000 bushels of soybeans due under two contracts entered into by Miller and Bunge in August, 1972. The case has been tried to a jury which answered interrogatories submitted to it by the Court. The parties stipulated that the Court should determine any questions of fact which had not been determined by the jury in their answers to the interrogatories.

In early August, 1972, Miller contacted Bunge at Boothspoint, Tennessee (a barge terminal on the Mississippi River) seeking to contract for October-November, 1972, delivery of soybeans to Bunge for $3.30 per bushel and was told that Bunge could not contract at that price at that time, but would do so if and when the market price rose sufficiently. Subsequently, Bunge sent Miller two contracts, one dated August 8 and one dated August 11, each for the purchase by Bunge of 5000 bushels of soybeans at $3.30 per bushel for October-November[1]

---

1. October-November delivery, it is agreed, means that delivery must be completed by November 30.

delivery at Boothspoint. Miller signed the contracts and returned them to Bunge. Pursuant to the contracts Miller delivered 534.39 bushels of soybeans on October 19, 1972 and 610.26 bushels on November 4, 1972 and was paid for them when he requested payment. Miller also delivered 549.67 bushels on January 4, 1973, but was not paid for that delivery. He has filed a counterclaim against Bunge for the amount due him for the January 4 delivery.

A clause in the contracts between Bunge and Miller provides that: "Buyer reserves the right, without further notice to Seller, to cancel, extend time, or to fill here or elsewhere at Buyer's option, any contract not filled within contract time, and any loss resulting therefrom to be paid by Seller." The jury found that the contracts were extended by Bunge on or before November 30, 1972, without notice to Miller and that Miller did not request an extension. The jury also found that there was an understanding between Miller and Carl Jones, Bunge manager at Boothspoint, that, regardless of whether the time for delivery under the contracts was extended, Miller would not be required to pay any greater damages than the damages due as of November 30, 1972 on any unfilled balance of the contracts. The market price on November 30 was $3.61½ per bushel.

On January 22, 1973, Carl Jones sent Miller a letter which stated in part: "As an accommodation to you, and without otherwise affecting your rights and obligations under the contract, we hereby agree to extend the time in which you may deliver the balance due under this contract to February 28, 1973." This was the only extension of the contract by Bunge in writing.

During the fall and winter of 1972 there were severe weather conditions in the form of unusually heavy rains and flooding of the Mississippi, Obion and Forked Deer Rivers in the areas where Miller farmed. On February 20, 1973, Miller told Carl Jones that because of those weather conditions, he would not be able to deliver the balance of the soybeans on the contract. Bunge treated Miller's statement as a repudiation and breach of the contract. The difference between market and contract price on that day was $2.82½ per bushel. The jury found that Miller was unable to deliver 4,150 bushels prior to February 20, 1973 by reason of the weather and conditions resulting therefrom.

We conclude, consistent with Miller's contention, that, under the circumstances here, damages could not be increased by the unilateral extension of the contract by Bunge.

▆▆▆ The parol evidence rule T.C.A. § 47–2–202, does not, as Bunge contends, preclude consideration of the understanding between defendant and Carl Jones as to damages. Such parol evidence rule precludes only consideration of evidence of a prior agreement or of a contemporaneous oral agreement which contradicts terms set forth in a writing intended by the parties as a final expression of their agreement with respect to those terms. Such terms, however, may be explained or supplemented by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. The understanding as to damages does not contradict any terms of the contract, for the clause allowing unilateral extension by Bunge without notice says nothing about the measure of damages in the event of an extension and a subsequent failure to complete delivery. Bunge contends, however, that term 13 of the contract which provides: "This confirmation covers Buyer's understanding of the terms of this transaction. Failure to wire Buyer immediately on receipt of this confirmation will be understood as Seller's acceptance of these terms" requires a conclusion that the contract is the complete and exclusive statement of the terms of the agreement. We do not agree. We cannot find, from the terms of the contract or otherwise, that it was intended as a

complete and exclusive statement of the agreement. We conclude that this oral understanding may be considered and supports Miller's understanding of the contract with respect to damages. Moreover, Bunge's letter of January 22, 1973 to Miller, after the formation of the contract, concerning the extension supports the interpretation that there would not be an increase as to damages in the event of a unilateral extension. The letter states: "As an accommodation to you and *without otherwise affecting your rights and obligations under the contract*[2], we hereby agree to extend the time in which you may deliver the balance due under this contract to February 28, 1973." This letter refers only to an extension of time for delivery; it makes no mention of a possible increase in damages by reason of any extension. On the contrary, it specifically states that the extension does not affect Miller's rights and obligations under the contract.

We therefore conclude that, if the defendant breached the contracts, he does not have to pay greater damages than the difference between the market price on November 30, 1972 and the contract price of the undelivered balance.[3]

Miller contends that, even if the contracts were extended, Bunge breached by not paying for the January 4 delivery when payment was demanded by Miller on or about January 15, and that therefore he owes no damages. He relies upon the fact that the terms of the contract were "net cash" and that Bunge upon demand paid defendant a short time after each of the first two deliveries. Miller thus contends that the parties by their actions interpreted the contracts to mean that when he made a delivery of soybeans he would be paid within a short time after he made demand for payment.

Bunge answers Miller's contention in several ways. First, relying upon a provision of the contract, it denies that it breached by not paying for the January 4 delivery after demand. Second, Bunge argues that if it did, however, breach the contract, the breach was not of such a nature as to go to the essence of the whole contract so as to enable defendant to cancel the contract. Third, Bunge contends that, in any event, Miller reinstated the contract by suing for the unpaid delivery. And finally, Bunge contends that Miller took no action on the alleged breach and thereby waived it.

Clause 11 of the terms and conditions, which Bunge relies on, states: "This contract is subject to reciprocal margins." Bunge's witness and district manager, Stockett, testified that provision meant Bunge could withhold payment for a delivery if (1) at the time of delivery there remained an undelivered balance of soybeans due on the contract, and (2) the market price of soybeans was higher than the contract price, and (3) the difference between market and contract price multiplied by the undelivered balance exceeded the payment due the seller for the soybeans delivered. Similarly, had the market price gone below the contract price and there remained undelivered soybeans Stockett testified, the seller could require Bunge to place the difference between market price and contract price on the undelivered balance in escrow for the seller. Clause 11 thus appears to be a security device for both parties. Miller did not introduce any evidence at trial that "subject to reciprocal margins" meant anything other than what Stockett testified.

2. Emphasis ours.

3. Since we determine that the unilateral extension without notice does not increase the damages over the damages as they existed on November 30, we do not reach Miller's alternative contention that to allow such an increase in damages would be unconscionable under T.C.A. 47–2–302. It should be obvious that, if the result were otherwise, an unprincipled buyer in the position of Bunge would have an opportunity, by hanky-panky, to take unfair advantage of the seller.

At the time of the first two deliveries, the price of soybeans had not risen above contract price (or had not risen appreciably), thus the conditions were not such that Bunge could have utilized the reciprocal margin provision. Thus, Bunge paid upon demand after the first two deliveries. On January 4, however, there was an undelivered balance of about 8300 bushels; the price had gone up $1 a bushel over the contract price and the amount due seller for the January 4 delivery was a little over $1600. We therefore conclude that Bunge did not breach by withholding payment on January 4 since it was acting within the rights granted it by the contract. Thus we need not consider Bunge's alternative contentions that are based on the assumption that such was a breach of contract.

The jury found that Miller was unable to deliver 4,150 bushels of soybeans to Bunge prior to February 20, 1973 by reason of the weather and the conditions resulting therefrom. Miller relies on T.C.A. § 47–2–615, which covers the general doctrine of impossibility, to excuse his non-performance.

Bunge contends that Miller cannot rely on § 47–2–615 because he did not comply with the notification provisions of that section. § 47–2–615(c) requires the seller to "notify the buyer seasonably that there will be delay or non-delivery, and when allocation is required . . ., of the estimated quota thus made available for the buyer." Failure to so notify the buyer prohibits defendant from relying on § 47–2–615 as a defense.

Anderson, in his treatise on the Uniform Commercial Code states:

[A] contract to sell a future crop from specified land is excused if without the promisor's fault there is no crop due to a blight or a flooding of the land. But a contract to sell a specified quantity of produce is not excused by the fact that the seller expected to fulfill the contract with the crop of a particular land, and that

such crop without fault on his part is a failure. A case of this sort, however, might come under the heading of "impossibility" if both parties contemplated fulfillment of the contract by a particular crop. 2 Anderson, Uniform Commercial Code § 2–615:21.

While the evidence confirms that Bunge's agent, Jones, knew that Miller was a farmer and assumed that he would supply the soybeans from crops he controlled, there is no evidence that Jones had any specific knowledge concerning Miller's soybean operations. Actually, it appears, of the amount Miller delivered to Bunge and another buyer, some beans were grown on Miller's own land, some on land rented by Miller on which he paid crop rent, and some on land owned jointly by Miller and his brother. Accordingly, we cannot find that Bunge contemplated that the contract would be filled by beans from a particular crop and therefore the defense of impossibility is unavailable to Miller.

Moreover, even if the defense of impossibility were otherwise available, Miller cannot rely on it because he did not give Bunge seasonable notice of his inability to deliver. The jury found, contrary to Miller's contention, that he did not give Bunge such notice in early December. Thus the earliest that it could be found that Miller gave notice was on February 20, 1973, which was certainly not seasonable notice.

Miller also contends that he was unable to deliver the soybeans because the primary road to Boothspoint was flooded during some of the period and an alternate route was across a levee which he thought would not support the weight of his loaded truck. However, the proof does not show that the inaccessibility of Boothspoint made delivery impossible during the period that Miller was obligated to deliver.

Accordingly, we find and conclude that Miller is liable to Bunge for failure to deliver the balance due under the contract, 8,305.68 bushels, the damages to

be determined as of November 30, 1972, less the amount owed Miller by Bunge for the delivery made by Miller under the contract on January 4, 1973.

For completeness, it should be pointed out that these transactions, though they involved a considerable amount of money, were handled very casually by Bunge and Miller. If they had been handled in a businesslike manner by either party, it is highly likely that this lawsuit would not have resulted. And it is certain that resolution of the lawsuit would not have been nearly as difficult as it was.