Kelley STRICKLAND,
Plaintiff-Appellant,

v.

CITY OF LAWRENCEBURG,
Defendant-Appellee.

Court of Appeals of Tennessee,
Middle Section.

Nov. 13, 1980.

Certiorari Denied by Supreme Court
Feb. 2, 1981.

Paul B. Plant, Harwell, Bottoms & Plant, Lawrenceburg, for plaintiff-appellant.

Charles H. White, White & Carden, Lawrenceburg, for defendant-appellee.

## OPINION

LEWIS, Judge.

Plaintiff filed his complaint alleging breach of a contract of June 20, 1973, to perform an audit of defendant's accounts in

that plaintiff had been paid only $10,000 of $31,141.35 allegedly due at his hourly rate. Trial was had before the Honorable Joe M. Ingram, Circuit Judge, and a jury. The jury returned a verdict for the defendant. Plaintiff's motion for a judgment n. o. v. or in the alternative for a new trial was denied and plaintiff has appealed.

The pertinent facts are: Plaintiff audited defendant's books for several years. In June, 1973, defendant contacted plaintiff concerning whether plaintiff would be interested in auditing defendant's books for 1973. As a result of that contact, plaintiff and defendant subsequently entered into a "CONTRACT TO AUDIT ACCOUNTS." The contract provided, inter alia, that plaintiff was to be paid for his services on an hourly basis; that defendant would have "all journals, ledgers, and other accounting records . . . completed, posted and available for the auditor by July 21, 1973, as promised." On the back of the contract, under the heading "Instructions," the following appears:

All contracts for auditing and preparation of financial statements between an auditor and governing body of any governmental unit or other subdivision of the State of Tennessee require the prior approval of the Comptroller of the Treasury, State of Tennessee. (Such approval is not required for system improvement and similar services of a non-auditing nature.)

Plaintiff and defendant, by its Mayor and Secretary-Treasurer, executed the contract on June 20, 1973. Pursuant to the instructions quoted above, the contract was forwarded to the Comptroller's office where it was approved by Frank L. Greathouse, Assistant to the Comptroller. Mr. Greathouse, prior to granting approval, discussed the contract with plaintiff and then returned the contract to defendant with a letter attached. We set out the letter in full:

June 29, 1973

Honorable Ivan Johnston
Mayor
City of Lawrenceburg
Lawrenceburg, Tennessee 38464

Dear Mayor Johnston:

Enclosed please find a copy of a contract to audit accounts for the City of Lawrenceburg, Tennessee, for the year ended June 30, 1973.

After a conversation with Mr. G. Kelley Strickland, Certified Public Accountant, who will be performing your audit, I have learned that Mr. Strickland will agree to estimate his fee for the audit of the City of Lawrenceburg to be approximately $10,000, and that any work performed in excess of this will be subject to confirmation by your office and the Comptroller of the Treasury's office.

Mr. Strickland stated in his telephone conversation that he had been and would be called upon to do a certain amount of management services for the City of Lawrenceburg, which work would not be in connection with the audit. He stated that in prior years that when he came to audit accounts, that these accounts were not in balance and ready for audit. I would advise you to have Mr. Chapman, the City Treasurer, to bring his books into balance and have them ready for audit with the trial balances balanced and bank accounts reconciled before Mr. Strickland begins his audit procedures other than for cash counts and inventory control, which should be done no later than July 2, which is the first day of the new year.

There has been some publicity concerning the high audit fee in past years and we are hoping that this agreement with Mr. Strickland will help to eliminate that in this year. If any problems occur in this area, we will be glad to consult with you concerning them.

Very truly yours,

/s/ Frank L. Greathouse

Frank L. Greathouse, Director
Division of Special Audit

Plaintiff testified that he received a copy of the letter.

Mr. Greathouse testified, by deposition, that he signed the contract and returned it to defendant with the letter and that he

had refused to approve the contract until an estimated limit of $10,000 had been set. Plaintiff testified that he did not make any firm estimate of $10,000 but that he did, upon reaching that level in the audit procedures, go to Nashville and inform Mr. Greathouse that he had reached $10,000. Plaintiff further testified that Mr. Greathouse "didn't say go ahead and didn't say stop" the audit. Plaintiff also testified that he informed Mr. Ivan Johnston, the Mayor of defendant City, that the $10,000 level had been reached.

Both Mayor Johnston and Mr. Greathouse denied that plaintiff informed them that the $10,000 limit had been reached.

Plaintiff presents for our consideration seven issues which we discuss as follows:

## I.

That there is no material evidence to support the verdict rendered by the jury herein.

■ "Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." TRAP Rule 13(d). In reviewing a judgment based upon a jury verdict, appellate courts are not at liberty to weigh evidence or to decide where the preponderance lies but are limited to determining whether there is material evidence to support the verdict. This applies as well in a breach of contract case tried by a jury just as in all others. *Crabtree Masonry Co., Inc. v. C & R Construction, Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978). There is material evidence in the case at bar to support the jury's verdict. While plaintiff testified that he did not agree to the $10,000 limit, and even if he did, he attempted to comply with the terms of the contract by informing both Mayor Johnston and Mr. Greathouse that he had reached the $10,000 level, both Mayor Johnston and Mr. Greathouse testified that plaintiff had agreed to the limit, that plaintiff failed to advise them when he reached the $10,000 limit, and that they did not approve going beyond the $10,000 limit. The jury apparently rejected plaintiff's testimony in favor of testimony of Mayor

Johnston and Mr. Greathouse. The credibility of witnesses and the weight to be given to their testimony is for the jury. *Williams v. Daniels*, 48 Tenn.App. 112, 130–31, 344 S.W.2d 555, 563 (1960). This issue is without merit.

## II.

That the Court erred in admitting evidence concerning the amount of accounting fees charged by other accountants prior to and since the audit performed by the Complainant herein.

■ While the objection here appears to be against the admission of fees charged by auditors other than plaintiff, both before and after the 1972–73 audit, the record discloses that plaintiff was the auditor for the years prior to 1972–73 for which the amounts for fees were introduced. Some of this same evidence came in through plaintiff's own direct testimony. He testified that his fee for the prior year was in the "neighborhood of Nineteen or Twenty Thousand ($19,000.00 or $20,000.00) Dollars."

While we are unable to glean from plaintiff's brief a specific reason that the admission of amounts paid for other audits was error, apparently plaintiff objects that certain of these figures were not relevant and apparently, also, on the ground that the fees were too remotely connected with the 1972–73 audit.

■ In Tennessee evidence is admissible if it tends to prove the issue or constitutes a link in the chain of proof. *Queener v. Morrow*, 41 Tenn. 123, 126 (1860); Paine, *Tennessee Law of Evidence* § 2 (1974). Whether evidence is admissible rests within the sound discretion of the trial court which will be reversed only for abuse of that discretion. *Pack v. Boyer*, 59 Tenn.App. 141, 149–50, 438 S.W.2d 754, 758 (1968). In the case at bar, the underlying issue is the intent of the parties in setting an alleged ceiling on the fee which plaintiff, absent special approval, could charge. Figures for audits of defendant's accounts in prior

years by this plaintiff and by other auditors in subsequent years are relevant in determining the parties' intent. Issue II is without merit.

### III.

■ That the Court erred in refusing to charge Complainant's requested Jury Charge No. 1 in its entirety, to wit:

"T.C.A. 12–432. Bids for professional services awarded on basis of competence and integrity.—Contracts by counties, cities, metropolitan governments, towns, utility districts and other municipal and public corporations of this state for legal services, fiscal agent of financial advisors or advisory services, educational consultants, and similar services by professional persons or groups of high ethical standards, shall not be based upon competitive bids, but shall be awarded on the basis of recognized competence and integrity. [Acts 1969, ch. 331, § 1.]"

Except for the title, the Trial Judge charged T.C.A. § 12–432 [now T.C.A. § 12–4–106] in its entirety. Plaintiff also objects to the Trial Judge's explanation to the jury of T.C.A. § 12–432. The Trial Judge stated that the statute did not preclude a city from entering into a contract for a definite amount or putting a ceiling on a definite amount to perform auditing services nor would it prevent a city from entering into a contract on an hourly basis for that service. Our review of the charge reveals no error in the Trial Judge's explanation of T.C.A. § 12–432. Issue III is without merit.

### IV.

■ That the Judge erred in refusing to charge Complainant's Requested Jury Charge Number 7, to wit:

"A breach of the contract takes place when one party disables the other party from performing. *Ault v. Dustin*, 100 Tn. 366, 45 S.W. 981."

The Trial Judge did indicate to plaintiff's attorney an intention to charge requested charge number 7, but in other language. We have searched the record and find that he did not. However, under the facts of the case at bar this charge would be inappropriate. *Ault v. Dustin*, 100 Tenn. 366, 45 S.W. 981 (1898), involved a contract which arose through correspondence between an Ohio dealer and a Tennessee rope manufacturer. In a suit by the dealer, the manufacturer successfully defended on the grounds that plaintiff had failed to submit specifications in time to permit the manufacture of the product, thereby justifying defendant in treating the contract as abandoned. *Ault* has most often been cited in connection with the principle that one rendering performance impossible may be liable to the other party without any tender of the goods, *John Deere Plow Co. v. Shellabarger*, 140 Tenn. 123, 203 S.W. 756 (1918); *Gardner v. Deeds & Hirsig*, 116 Tenn. 128, 92 S.W. 518 (1906); and the related question of when a contract is sufficiently definite to sustain a suit, 105 A.L.R. 1102 (1936). But *Ault* does not stand for the proposition that one who compounds, rather than mitigates, his damages can recover for the added damages. *Ault*, 100 Tenn. at 382–84, 45 S.W. at 985; *Fire Extinguisher Manufacturing Co. v. City of Clarksville*, 52 S.W. 442, 446 (Tenn.Ch.App.1899) (complainant denied recovery for continued manufacture of fire engine after notice of repudiation). While *Ault* might be an appropriate rule if plaintiff were defending a suit brought by defendant, or if plaintiff were bringing suit after treating the failure to furnish the books on time as a breach upon which he had treated the contract as cancelled, repudiated, or abandoned, it does not mean that a non-breaching party can recover avoidable damages he sustains—even if he acceded to demands of the other party because another course of action would have resulted in a major disruption of his personal or business affairs. Calamari & Perillo, *Contracts* § 216 pp. 347–48 (1970). Therefore, the argument that the instruction should have been given because defendant's failure to turn over the books by July 21, 1973, disabled plaintiff from completing the audit in $10,000 worth of hours is meritless.

We discuss Issues V and VI together.

## V.

That the Judge erred in refusing to charge Complainant's Requested Jury Charge Number 10, to wit:

"In order for mutual promises of parties to furnish consideration necessary to support a modifying agreement, it must contemplate the assumption of additional burdens by both parties, and if all benefits fall on one person and all burdens are saddled on the other the modifying agreement is null and void. *Tampa Electric Company vs. Nashville Coal Company [D.C.]*, 214 Fed.Sup. 647."

## VI.

The Court erred in failing to determine as a matter of law that the letter sent by Greathouse to Johnston, a carbon copy of which was sent to Strickland, was not a part of the original contract but was an attempt to modify an agreement unilaterally and without the express approval of all the parties involved in writing as was required by the original contract, particularly in light of Mayor Johnston's testimony that the letter from Greathouse came in an envelope by itself and there were no other documents, specifically the contract, attached or even included in the envelope.

■■■ *Tampa Electric Co., supra,* was decided under Florida law. However, consideration is a necessity for modification under Tennessee law as well. *Boyd v. McCarty,* 142 Tenn. 670, 676, 222 S.W. 528, 530 (1920); *Hayes v. Lewis,* 12 Tenn.App. 627, 636–37 (1930). But even though plaintiff's requested jury charge number 10 is a correct statement of the law, for the trial court to be held in error for refusing a charge, it must not only be legally correct, it must also be applicable to the facts in evidence. Our review of this record fails to disclose any evidence that there was a modification of the contract. The contract in the case at bar was conditioned upon the approval of the Comptroller of the Treasury.

■■ A condition precedent in the law of contracts may be a condition which must be performed before the agreement of the parties shall become a binding contract or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. 17A C. J. S. *Contracts* § 338. In the case at bar, before the contract between plaintiff and defendant City of Lawrenceburg for auditing and preparation of financial statements could become effective, "the prior approval of the Comptroller of the Treasury, State of Tennessee" was required. The Comptroller's approval was a condition precedent to the existence of the contract. No liability under the contract attached either to plaintiff or defendant until such time as the condition precedent was fulfilled. *Real Estate Management, Inc. v. Giles,* 41 Tenn.App. 347, 353, 293 S.W.2d 596, 599 (1956).

We note that neither plaintiff nor defendant address the question of whether the Comptroller's approval is statutorily made a condition precedent to the audit contract. There was some discussion at trial of the Comptroller's statutory duty to audit defendant or to see that it was done. We have found several statutes which seem to contemplate the approval of the audit in the context of its conformity to generally accepted accounting principles [1] but we are cited to no statute, nor have we found one, which makes it necessary for the Comptroller to approve such things as the cost of the audit.

However, even without a statute, that portion of the contract which states "[a]ll contracts for auditing and preparation of financial statements between an auditor and any governing body of any governmental unit ... require the prior approval of the Comptroller of the Treasury, State of Tennessee" is a perfectly valid condition precedent. The Comptroller's approval is analogous to the approval in the textbook case of *Pym v. Campbell,* 6 El. and Bl. 370 (1856), where the parties executed a written

---

1. T.C.A. §§ 4–3–301 to 4–3–307; T.C.A. § 5–8–503; T.C.A. § 8–4–109; T.C.A. § 9–3–112; T.C.A. § 6–35–311; and T.C.A. § 6–56–105.

contract for the purchase and sale of an invention but there was an oral condition that the invention be approved by the buyer's advisor Abernethie. Abernethie did not approve, and this was a good defense in an action to compel payment. After due consideration of Issues V and VI, we find them to be without merit.

## VII.

That the Court erred in failing to determine as a matter of law that the City was estopped from refusing to pay Complainant's claim on the theory of quantum merit [sic], all of the evidence indicating that there has never been any question that the Complainant put in the hours listed on his statements and further that the majority of the hours were put in at the City Administration Building in Lawrenceburg, Tennessee, and that your Complainant and representatives of the City of Lawrenceburg, particularly the Mayor and the Treasurer, had almost daily contact and that the City was knowledgable [sic] of the amount of time being required of Mr. Strickland both as a matter of direct contact with Mr. Strickland and as a result of the City's own records of Mr. Strickland's time but that the City at no time made any attempt to stop Mr. Strickland nor did they at any time call to his attention their intent to refuse to pay for hours expended.

Plaintiff's complaint states a cause of action based on the June, 1973, contract. We find no allegation in the complaint alleging that he is entitled to recover on the theory of quantum meruit. Our review of the record discloses that the case was tried on the basis that plaintiff was entitled to recover on the contract. The record fails to disclose that plaintiff at any time moved to amend his complaint to sue on the theory of quantum meruit.

Our review of this record fails to disclose that plaintiff, at any time before his motion for a new trial, moved the Court to "determine as a matter of law that the City was estopped from refusing to pay [plaintiff's] claim on the theory of quantum merit [sic]." At no time was the Court requested by plaintiff to charge the jury that plaintiff was entitled to recover on the theory of quantum meruit. The Court has no duty to create a claim the pleader does not spell out in his complaint. *Donaldson v. Donaldson,* 557 S.W.2d 60, 62 (Tenn.1977). Issue VII is without merit.

Plaintiff also contends that the letter from Mr. Greathouse to defendant, which we have set out in full, should not have been admitted because of the parol evidence rule. We are of the opinion that the "parol evidence rule" would not bar admission of the letter. Tennessee adheres to the rule that parol evidence may be admitted to show a condition precedent. *Santa Barbara Capital Corp. v. World Christian Radio Foundation, Inc.,* 491 S.W.2d 852 (Tenn.App.1973); *Crotzer v. Shawl,* 5 Tenn.App. 240 (1927); *Breeden v. Grigg,* 67 Tenn. 163 (1874). But even if the letter represented a subsequent modification of the contract, it would still be admissible. *Brunson v. Gladish,* 174 Tenn. 309, 125 S.W.2d 144 (1939); *Trice v. Hewgley,* 53 Tenn.App. 259, 381 S.W.2d 589 (1964).

The theory of plaintiff at trial was that the letter represented a modification or an attempt to modify the contract. Plaintiff, in his brief, also characterizes the letter for parol evidence purposes as a collateral agreement. Evidence of a prior or contemporaneous agreement inconsistent with or varying the terms of a written contract is, of course, inadmissible under the parol evidence rule. But the terms of a written agreement intended by the parties as a final expression may be explained or supplemented by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement. *Bunge Corp. v. Miller,* 381 F.Supp. 176, 178 (W.D.Tenn. 1974). In regard to collateral agreements, the facts of each case must control the application of the parol evidence rule and the exceptions thereto. *Early v. Street,* 192 Tenn. 463, 472, 241 S.W.2d 531, 535 (1951) (stating that proper test on whether agree-

ment is collateral is whether oral agreement is one which, considering the circumstances of the parties, the subject matter, and the nature of the writing, would ordinarily have been embodied in the written instrument had the parties intended that they should be bound thereby). We are of the opinion that, under the facts and circumstances of this case, the letter from Mr. Greathouse was admissible.

It results that each of the issues of plaintiff is without merit. The judgment of the Trial Court is affirmed. Costs of this cause are taxed to plaintiff, and the cause is remanded to the Trial Court for collection of costs and any other necessary proceedings.

TODD, P. J., and ALLEN R. CORNELIUS, Jr., Special Judge, concur.