**Barbara Ann ALLISON**

v.

**Anthony Ensley HAGAN.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

May 25, 2006 Session.

June 23, 2006.

Permission to Appeal Denied by Supreme Court Nov. 13, 2006.

Thomas F. Bloom, Nashville, Tennessee, and Calvin P. Turner, Mount Juliet, Tennessee, for the Appellant Anthony Ensley Hagan.

Gloria Jean Evins, Lebanon, Tennessee, for the Appellee Barbara Ann Allison.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Barbara Ann Allison ("Wife") and Anthony Ensley Hagan ("Husband") entered into a Marital Dissolution Agreement ("MDA") prior to their divorce in 1991. As part of the marital property settlement, the MDA required Husband to pay Wife, in addition to her one-half share in the marital residence, a lump sum payment of $47,000 when the marital residence was sold. Husband also agreed to pay child support in the amount of $818.79 per month. Several years later, Husband reduced his child support payment to $500 per month when the parties' oldest child became emancipated. When the marital residence sold in 2004, Husband refused to pay Wife the $47,000, asserting that Wife's claim to the $47,000 was barred by the applicable statute of limitations. Wife filed a Petition for Contempt claiming Husband violated the MDA when he unilaterally reduced his child support payment and when he refused to pay her the $47,000. Following a trial, the Trial Court determined that Husband violated the MDA by unilaterally reducing his child support payment and by refusing to pay Wife the balance of the $47,000. The Trial Court also entered judgment for Wife for her attorney fees incurred in enforcing the MDA. Husband appeals. We affirm the judgment of the Trial Court.

### Background

Husband and Wife were divorced in July of 1991. The Final Decree of Divorce incorporated the terms of the MDA agreed to by the parties. The primary focus in this appeal surrounds the MDA's provisions as they pertain to the marital property settlement, child support for the parties' two children who were minors when the divorce was granted, and attorney fees incurred in enforcing the terms of the MDA. With respect to these items, the MDA provides, in relevant part, as follows:

3. *CHILD SUPPORT.* Husband shall pay to Wife, for the support and maintenance of the minor children, the sum of $818.79 per month, beginning on August 1, 1991. Said payments shall be payable on or before the 1st day of each month thereafter. The child support payments are in accordance with the federal guidelines and shall continue until the youngest minor child reaches the age of 18 or graduates from high school, whichever occurs later.

\* \* \*

7. *MARITAL RESIDENCE.* The parties agree that Wife will have the exclusive possession of the parties' marital residence ... until such time as the property is sold. The parties shall own said marital residence as tenants in common after entry of the Final Decree of Divorce....

The parties shall equally divide all net proceeds or any deficiency which exists after the sale of said marital residence....

\* \* \*

16. *CASH SETTLEMENT.* For and in consideration of the sum of $55,000.00, Wife shall waive her equity interest in all assets which Husband has received under this agreement. Husband shall pay Wife the sum of $8,000.00 upon entry of the Final Decree of Divorce. Husband shall pay Wife the remaining $47,000.00 upon the sale of the parties' marital residence.

Husband shall secure Wife in the payment of the remaining $47,000.00 by executing a deed of trust on the parties' marital residence located at 2088 Poplar Hill Road, Watertown, Tennessee. Husband shall pay the recording fee for the Deed of Trust....

\* \* \*

23. *FUTURE LEGAL PROCEED-INGS* .... If either party reasonably institutes legal proceedings to procure the enforcement of any provision of this agreement, then [that party] will also be entitled to a judgment for reasonable expenses, including attorney fees, incurred in prosecuting the action.

Wife filed a Petition for Contempt in February of 2004, approximately 12½ years after entry of the Final Decree of Divorce. Wife's petition claimed Husband violated the terms of the MDA when he: (1) failed to execute a Deed of Trust in Wife's favor to secure her interest in the marital residence; (2) failed to pay Wife the $47,000 as called for in the property settlement; and (3) unilaterally and improperly reduced his child support payment thereby resulting in a total arrearage of $58,242.93 in principal and accumulated interest. Wife also claimed she was entitled to an award of attorney fees which were reasonably required to prosecute this action to enforce the terms of the MDA.

Husband responded to the petition claiming he did execute a Deed of Trust in Wife's favor which was filed with the Register's Office in Wilson County. Husband asserted that Wife's claim for $47,000 was "barred by the Statute of Limitation on enforcement of Judgments—T.C.A. 28–3–110...." Husband also claimed that, per agreement of the parties, he reduced his child support payment to $500 per month when the oldest child graduated from high school. Husband, an attorney, claimed Wife specifically agreed to this reduction but the "parties simply failed to submit an Agreed Order to the Court modifying its Order." Finally, Husband claimed that he was entitled to an offset in the amount of $62,000 on any arrearages because Wife failed to pay her share of the mortgage on the marital residence and Husband was

required to satisfy same in order to clear title to the property prior to its sale.

A trial was held in August of 2005 after which the Trial Court entered a detailed Order resolving the various issues. The Trial Court summarized the proof offered at trial as well as the parties' respective positions on the various issues. With regard to Husband's reducing his child support payment when the oldest child graduated from high school, the Trial Court held:

This Court finds that the Respondent improperly reduced his child support payment in 1994. The specific language of the MDA prohibited him from claiming pro ration on his son's graduation as he might have done if the language defining the support had been more general.... The Respondent agreed to the specific language regarding payment of child support until the youngest child turned 18 or graduated. This agreement exceeded his legal obligation to pay support and is thus treated as contractual and not modifiable by the court and not modifiable by the Respondent without providing consideration to the Petitioner for the modification of the contract. This Court finds no legal consideration for this purported modification.

As to the $47,000 Wife claimed was due upon the sale of the marital residence, the Trial Court concluded that this claim was not barred by the ten year statute of limitations applicable to enforcement of judgments. The Trial Court held that any applicable statute of limitations did not begin to run until the house was sold in 2004. However, the Trial Court also determined that Husband was entitled to a credit against the $47,000 in the amount of $7,259.80, which Husband had advanced to Wife so their daughter could purchase a car. Both parties agreed at trial that the

$7,259.80 was to be considered as an advance against the $47,000 that would be due Wife upon the sale of the marital residence. Thus, the Trial Court ultimately concluded that Wife was entitled to a judgment for $39,740.20 on this claim.

After reserving the issue of Wife's claim for attorney fees, the Trial Court entered a judgment against Husband for $41,761.49 in past due child support, plus an additional $28,397.81 in interest which had accrued through August 31, 2005. Wife also was awarded $39,740.20, which represented the balance due on the $47,000 to be paid by Husband when the house was sold, plus prejudgment interest at the rate of 10% starting from when the house was sold on June 15, 2004. Even though Wife ultimately was successful on these claims and the Trial Court found Husband had violated the terms of the MDA, the Trial Court nevertheless concluded these violations were not willful and declined to hold Husband in contempt of court.

Following a final hearing on Wife's claim for attorney fees, the Trial Court concluded Wife was entitled to an award of attorney fees pursuant to Tenn.Code Ann. § 36–5–103(c) and the pertinent language of the MDA. The Trial Court awarded Wife a total of $14,251.68 in attorney fees.

Husband appeals raising the following issues, which we quote:

I. Whether the Trial Court erred in failing to dismiss Wife's claim for the $47,000.00 as time-barred under the ten year limitations period applicable to judgments.

II. Whether the Trial Court erred in: (1) determining that Husband contractually agreed to pay child support in excess of that called for by the guidelines; and (2) concluding that Husband thus had no right to pro rate his obligation upon the

older child's graduation from high school.

III. Whether the Trial Court erred in awarding Wife her attorneys fees incurred at trial.

### Discussion

■ The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R.App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn.2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn.2001).

■ Husband's first issue is his claim that the ten year statute of limitations applicable to enforcement of judgments bars Wife's claim for the $47,000 she was due upon the sale of the marital residence. The statute relied upon by Husband is Tenn.Code Ann. § 28–3–110 which provides, in pertinent part, as follows:

**28–3–110. Actions on public officers' and fiduciary bonds—Actions not otherwise covered.**—The following actions shall be commenced within ten (10) years after the cause of action accrued:

\* \* \*

(2) Actions on judgments and decrees of courts of record of this or any other state or government. . . .

In the recent case of *Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2006), our Supreme Court offered the following guidance with respect to the enforcement of marital dissolution agreements:

We have previously held that a marital dissolution agreement "is a contract

and as such generally is subject to the rules governing construction of contracts." *Johnson,* 37 S.W.3d at 896; *see also Matthews v. Matthews,* 24 Tenn. App. 580, 148 S.W.2d 3, 11 (Tenn.Ct. App.1940) (holding that the separation agreement was a valid and enforceable contract absent a showing of fraud or coercion).. This is consistent with the Court's treatment of other agreements made respective to marriage, in which we seek to determine the rights of each spouse in the marital property and to resolve other issues, such as spousal support. These types of agreements consistently have been found to be valid and enforceable contracts between the parties. *See, e.g., Bratton v. Bratton,* 136 S.W.3d 595, 600 (Tenn.2004) (postnuptial agreements); *Kahn v. Kahn,* 756 S.W.2d 685, 694–95 (Tenn.1988) (prenuptial agreements); *Hoyt v. Hoyt,* 213 Tenn. 117, 372 S.W.2d 300, 303–04 (Tenn.1963) (reconciliation agreements).

Additionally, settlement agreements made during or in contemplation of litigation are enforceable as contracts. *See, e.g., Envtl. Abatement, Inc. v. Astrum R.E. Corp.,* 27 S.W.3d 530, 539 (Tenn.Ct.App.2000) (stating that "[a] compromise and settlement agreement is merely a contract between the parties to litigation and, as such, issues of enforcability of a settlement agreement are governed by contract law"); *Harbour v. Brown for Ulrich,* 732 S.W.2d 598, 600 (Tenn.1987) (stating that a settlement agreement may be "a binding contract, subject to being enforced as other contracts"); *Ledbetter v. Ledbetter,* 163 S.W.3d 681, 685 (Tenn.2005) (stating that "a mediated agreement is essentially contractual in nature"). Just as prenuptial and post-nuptial agreements are contracts, and as written marital dissolution agreements reached in mediation are contracts, so too are written and

signed marital dissolution agreements reached independently by the parties. *Barnes,* 193 S.W.3d at 496-497.

In *Strickland v. City of Lawrenceburg,* 611 S.W.2d 832 (Tenn.Ct.App. 1980), we observed that a "condition precedent in the law of contracts may be a condition which must be performed before the agreement of the parties shall become a binding contract *or it may be a condition which must be fulfilled before the duty to perform an existing contract arises.* 17A C.J.S. *Contracts* § 338...." *Strickland,* 611 S.W.2d at 837 (emphasis added). As such, no liability arises under the contract until such time as the condition precedent is fulfilled. *Id. See also Dick Moore, Inc. v. Greentree Financial Corp.,* No. 02A01–9707–CV–00148, 1998 WL 802008 (Tenn.Ct.App. Nov.18, 1998), *no appl. perm. appeal filed.* Applying these general contract principles to the language of the MDA at issue in this case, while Wife's interest in the marital residence was to be secured by a deed of trust, the sale of the marital residence is properly considered a condition precedent which triggers Husband's obligation to pay Wife $47,000.00. Until the house was sold, Wife could not demand from Husband payment of the $47,000 as Husband was under no legal obligation to make such a payment until that event occurred.

Husband argues that at all times Wife had the power to force a sale of the house because they were tenants in common. *See Yates v. Yates,* 571 S.W.2d 293, 296 (Tenn.1978)("As a general proposition of law, a tenant in common is entitled to partition, or sale for partition."); Tenn. Code Ann. § 29–27–101, *et seq.* Relying on *Minor v. Minor,* 863 S.W.2d 51 (Tenn. Ct.App.1993), Husband then argues that because the MDA did not specify a time frame in which the house was to be sold, it must be implied either that the sale would

occur within a reasonable time or that Wife would force its sale through a partition action within a reasonable time. Husband relies on the following language in *Minor*:

Where no provision is made in the contract for performance, a reasonable time is implied. Completion of a contract within a reasonable time is sufficient if no time is stipulated. Where the parties have not clearly expressed the duration of the contract, or where the duration of the contract is indefinite, the courts will imply that they intended performance to continue for a reasonable time. 17A Am.Jur.2d Contracts § 479 (1991). "What constitutes a reasonable time within which an act is to be performed where a contract is silent upon the subject depends on the subject matter of the contract, the situation of the parties, their intention in what they contemplated at the time the contract was made, and the circumstances attending the performance." *Id.* § 480.

*Minor*, 863 S.W.2d at 54.

Initially we note that pursuant to the MDA, Wife was permitted to remain in the marital residence with the parties' children. Wife and the children remained in the marital residence until 1995, when they moved out following the sudden and unexpected death of Wife's second husband. At that time, Husband began residing in the marital residence. *Even if* Wife was required to have forced a partition sale within a reasonable time, we do not believe it was unreasonable for her not to force such a sale for the years that she resided in the residence with the parties' children. Even more pertinent is the fact that the house was listed for sale shortly after the divorce was granted. It would make no sense to force Wife to file a partition action when the house was actively being listed and marketed for sale.

When the marital residence initially was listed for sale, the asking price was $450,000, but later was reduced to $425,000. The parties received an offer of $390,000 sometime in 1993 or 1994, an offer which Wife thought was reasonable. Husband, however, did not think it was a fair offer and unilaterally refused to sell the house for that amount. The house remained on the market from time to time over the years and eventually sold approximately ten years later for $340,000.00. While these facts certainly could lead to the conclusion that perhaps Husband was unreasonable when he refused to sell the house for $390,000 in 1993 or 1994, Husband makes the altogether astounding argument that these facts are evidence *of Wife being unreasonable.* Husband states in his brief:

Wife testified that the parties received an offer of $390,000.00 for the house in 1993 or 1994. (Tr., 13) This offer should have resulted in a sale, as it represented some 92% of the $425,000.00 asking price (*Id* ) and Wife testified that Husband should have accepted it. (*Id* at 21). Instead, Husband rejected the offer and Wife simply deferred to his judgment, as she had in the past. (*Id* ). Wife's conduct, however, was clearly unreasonable in this situation.

Husband goes on to claim that Wife should have sought legal counsel at that time and made further inquiry into her legal rights *to force a partition sale of the marital residence.*

Assuming for present purposes only that Wife was under a duty to force a partition sale within a reasonable amount of time, Husband fails to offer any explanation as to why he would not or should not be held to that same standard. Husband claims he should be allowed to retain the $47,000 because of Wife's alleged unreasonableness in not timely forcing a sale. While hind-

sight shows that Wife certainly was unwise in continuing to rely on Husband's advice concerning the sale of the marital residence, Husband's argument that Wife's reliance on his judgment was so unreasonable as to trigger the statute of limitations is unpersuasive. This is even more apparent given that if the conduct of either of the parties could be characterized as unreasonable, it would be the conduct of Husband.

Assuming, without deciding, that Wife was under a duty to take steps to have the house sold within a reasonable amount of time, as the house was on the market at various times over the years and because it was Husband who solely was responsible for rejecting a seemingly reasonable offer on the house in 1993 or 1994, we readily conclude that Wife's actions taken as a whole were not unreasonable. It necessarily follows that when the house was sold in June of 2004, any applicable statute of limitations on Wife's claim for the $47,000 began to run at that time. Accordingly, Husband's argument that Wife's claim for the $47,000 was barred by the ten year statute of limitations for enforcing judgments must fail.[1]

 Husband's next issue is his claim that the Trial Court erred when it concluded that he contractually agreed to pay child support in excess of that called for in the Child Support Guidelines (the "Guidelines"). The parties are in agreement that when the MDA was entered into, Husband's child support obligation for two children pursuant to the Guidelines was $818.79 per month. As set forth previously, the language contained in the MDA provides that:

> Husband shall pay to Wife, for the support and maintenance of the minor children, the sum of $818.79 per month, beginning on August 1, 1991. Said payments shall be payable on or before the 1st day of each month thereafter. The child support payments are in accordance with the federal guidelines *and shall continue until the youngest minor child reaches the age of 18 or graduates from high school, whichever occurs later.* (emphasis added)

An agreement to pay child support in excess of that called for in the Guidelines is treated as a contract between the parties with respect to the amount of child support which exceeds the base amount in the Guidelines. *See Arze v. Arze*, No. E2004–01325–COA–R3–CV, 2005 WL 1212609 (Tenn.Ct.App. May 23, 2005), *no appl. perm. appeal filed.* The Trial Court in this case essentially held that the parties agreed in the MDA that Husband would pay $818.79 in child support and the payment *of that amount* would continue until the youngest child reached the age of 18 or graduated from high school, whichever occurred last. The Trial Court also determined that, to the extent any of the $818.79 exceeded the amount of base child support called for in the Guidelines, the excess amount was a contractual obligation agreed to by Husband.

Husband's primary argument on appeal is that the relevant language in the MDA is ambiguous and, therefore, there was no meeting of the minds and the provision is unenforceable to the extent it requires him

---

1. Since we conclude that Wife acted reasonably, we express no opinion on whether Wife actually was under a legal obligation to force a partition sale within a reasonable amount of time following the divorce. Because any applicable statute of limitations did not begin to run until 2004, we likewise need not decide whether Wife's claim for the $47,000.00 is governed by the ten year statute of limitations applicable to judgments, or the six year statute of limitations applicable to contracts found at Tenn.Code Ann. § 28–3–109(a)(3).

to pay anything in excess of that required by the Guidelines. Husband argues that what the language in the MDA really means is that he will pay Guidelines child support and nothing more, and the Guidelines permit a reduction in child support when a child becomes emancipated. Husband then argues that, at the very least, his interpretation of the language in the MDA is a reasonable interpretation of the language, thereby demonstrating that it is ambiguous.

We agree with the Trial Court that the language in the MDA is not ambiguous and is not reasonably susceptible to differing interpretations. The MDA clearly provides that Husband will pay child support in the amount of $818.79, and that payment would "continue until the youngest minor child reaches the age of 18 or graduates from high school, whichever occurs later." We reject Husband's argument that this language is ambiguous. We agree with the Trial Court that the language is clear and, to the extent any of the $818.79 exceeds the amount required by the Guidelines, the excess is to be treated as a contractual agreement between the parties. We also agree with the Trial Court's conclusion that there was no consideration to support a modification of this contractual agreement. The Trial Court's

judgment on this issue is, therefore, affirmed.[2]

Husband's final issue is his claim that the Trial Court erred when it awarded attorney fees to Wife. Husband's argument on this issue is entirely dependent on his success with the other issues. Specifically, Husband claims that because Wife should have lost on the previous issues, she should no longer be declared the prevailing party for purposes of awarding attorney fees under Tenn.Code Ann. § 36–5–103(c)[3] or the relevant language in the MDA. Because we have affirmed the Trial Court on the previous issues, Husband's argument challenging the award of attorney fees to Wife must necessarily fail. It is for this same reason that we also decline Husband's request for an award of attorney fees he incurred on appeal, and we note that Wife made no such request.

### Conclusion

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellant Anthony Ensley Hagan and his surety.

2. It is important to note that Husband never states what the Guidelines child support actually would have been over the years and after the original amount was established in 1991. If the Guidelines support was $818.79 for two children in 1991, we strongly suspect the Guidelines amount would have increased over the years along with the income of Husband, who is a practicing attorney. Although Wife does not argue this point, for all this Court knows the amount of $818.79 may have been less than what was actually required by the Guidelines for one child over the years given all the relevant facts.

3. Tenn.Code Ann. § 36–5–103(c) provides that: "The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court."