# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 26, 2012 Session

## MARTHA ELAINE WEAVER CARTER v. DAVID RAY CARTER

**Appeal from the Circuit Court for Davidson County**
**No. 05D849    Amanda Jane McClendon, Judge**

**No. M2012-00342-COA-R3-CV - Filed December 28, 2012**

In this post-divorce appeal regarding child support, we have concluded that the trial court erred in requiring mother to establish a trust account for gifts to the parties' minor child. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS, J., joined. FRANK G. CLEMENT, JR., J., not participating.

Tyree B. Harris, IV and Katherine A. Brown, Nashville, Tennessee, for the appellant, Martha Elaine Weaver Carter.

James H. Drescher, Brentwood, Tennessee, for the appellee, David Ray Carter.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Martha Elaine Weaver Carter ("Mother") and David Ray Carter ("Father") were divorced in October 2006. One child was born of the marriage. Under the permanent parenting plan incorporated in the final divorce decree, father was obligated to pay $966 per month in child support. In addition, Father was to pay one-half of the child's tuition at a specified private school.

In July 2009, Mother filed a petition to modify child support based on an increase in Father's income. Mother filed an amended petition in November 2009 in which she alleged the following:

That there have been material changes of circumstances affecting the private education of the minor child in that at the time of the entry of the Final Decree of Divorce, the [maternal grandmother] was essentially underwriting [Mother's] portion of the tuition. At the present time, however, [the maternal grandmother] is 80 years of age and is no longer contributing in any way to the tuition of the minor child.

Mother went on to assert that, with his increased income, Father was "fully capable of underwriting the total amount of the tuition associated with the continued attendance of the minor child at CPA." Mother also alleged that, since the final decree was entered, the private school had initiated a compulsory uniform policy and that the original parenting plan "inadvertently failed to deal with attendant issues such as the cost of books, fees and meal plan, all of which are uniquely associated with the private education of the minor child." Based upon the parties' "disproportionate" incomes, Mother requested that Father pay all of these expenses.

The parties engaged in discovery. In November 2010, the court entered an order to compel discovery in which the court incorporated a number of agreements announced by the parties, including the following:

That in response to the Father's Request for Production of Documents #12, and Motion to Compel, the Mother has previously provided documents reflecting all out-of-pocket expenses related to incidental private school expenses for uniforms, books and school-related extra-curricular activities for the 2009-2010 school year and shall provide such additional out-of-pocket expenses for the 2010-2011 school year that she requests [the] Court to consider, and the Father may secure tuition-related expenses directly from the private school. *The parties have agreed that this is an appropriate case for the parties' child to attend private school and based on the parties' respective incomes, the Court shall prorate private-school related tuition, fees, costs of books, uniforms and school-related extracurricular activities.*

(Emphasis added). The parties stipulated that Mother was not seeking an upward deviation for "extraordinary extra-curricular activities."

*The hearing*

The trial court held a hearing on Mother's petition to modify child support on June 13, 2011. Mother testified that, at the time when the parties agreed on the permanent parenting plan, the child's maternal grandmother was paying half of the private school tuition. The

statement in Mother's amended petition to modify child support that the maternal grandmother was no longer going to pay half of the tuition was based on statements made by the maternal grandmother to Mother. Mother acknowledged that the grandmother changed her mind and had continued to pay half of the tuition.

When Mother's counsel began to ask questions regarding expenses associated with the child's private schooling, counsel for Father objected and the trial court ruled that such evidence was not relevant based upon the language of the permanent parenting plan, which referenced only tuition. Mother's counsel then made an offer of proof regarding Mother's expenses associated with the child's private schooling.

Mother also testified about money received by her and/or the child from the maternal grandmother. Since the divorce, the maternal grandmother had continued to give the child gifts of money, which Mother put into an account. During her direct testimony, Mother could not recall the maternal grandmother giving Mother gifts since the divorce. On cross-examination, Mother testified that she had received money from her father's estate in 2007. Grandmother made annual gifts to the child in the amount of $10,000 or $11,000. Mother placed this money into an interest-bearing account for the child's benefit, but the child's name did not appear on the account. Mother admitted that she also put some of her own money into the same account. When questioned by the court, Mother acknowledged that, when the maternal grandmother gave Mother checks in the amount of $11,000 to cover payments on a life insurance policy, amounts in excess of the $7,500 policy payment were gifts to Mother.

*Court's initial order*

The court entered its order on August 31, 2011, granting in part and denying in part Mother's petition to modify child support. The court denied Mother's request to require Father to pay school-related expenses other than tuition. As a basis for this decision, the court stated:

> As a matter of law, the parties entered into a binding agreement which agreement was incorporated into their Final Decree of Divorce. The parties' agreement clearly provides for the respective rights and responsibilities of the parties and said agreement is contractual and may not now be amended.

Since it was undisputed that the maternal grandmother had continued to pay half of the child's tuition from the time of the divorce until the present, the court denied Mother's request to increase Father's obligation with regard to tuition.

-3-

In light of the annual gift of $3,500 ($11,000 minus the $7,500 insurance payment) received by Mother from the maternal grandmother, the court increased Mother's income by $313.98 per month. The court granted Mother's request to increase Father's monthly child support obligation. Father's monthly child support was increased to $1,565, based upon a four-year average income for 2007 through 2010, and the new child support figure was made retroactive to July 2009, resulting in a back child support award of $14,376.

Included in the court's order are the following provisions concerning gifts to the child:

> [Mother] shall create a separate trust account for the use and benefit of the minor child in the amount of $66,000.00 representing the six annual gifts in the amount of $11,000.00 received by the said minor child from her maternal grandmother which trust account will remain in full force and effect until the 21st birthday of the said minor child and from which, absent an Order of the Court, the only withdrawals which may be made from this account are to pay any state and/or federal income taxes which may become due and owing by virtue of the activity in said account.

The court also awarded Mother her attorney fees in connection with the petition to modify child support.

*Post-trial motions and orders*

Mother moved to set the amount of attorney fees, along with an affidavit and an itemized accounting of her counsel's time and fees. Mother also filed a petition to alter or amend the judgment entered on August 31, 2011 with regard to the amount included in the trust account established for the child, Father's parenting time, and the calculation of back child support. She submitted an affidavit of the maternal grandmother as well as her own affidavit regarding amounts gifted to the child. Both affidavits state that the actual amount gifted was $42,000, not $66,000.

The court held a hearing on October 28, 2011 on Mother's motion to alter or amend and Mother's motion for attorney fees. Testimony was heard from Father's original attorney, Mother's attorney, and Father. The court took the matter under advisement. Father then filed a motion to stay the ruling on post-trial motions and to compel the testimony of Mother. The court set another hearing for January 6, 2012 at which Mother was to appear in person. Father would be permitted to take her testimony on two issues: attorney fees and the request for sharing school expenses. The court specifically noted the November 30, 2010 agreed order and how it might relate to the court's August 2011 rulings. The court also noted that Mother and her lawyer had married on June 16, 2011.

-4-

At the hearing on January 6, 2012, the court heard testimony from Mother regarding the expenses she had incurred in association with the child's private schooling. Mother also testified about her fee agreement with Mr. Harris, her attorney (now husband). She stated that she and Mr. Harris "had a verbal agreement that these payments would be deferred until after this case was completed and let the courts decide." Mother also took testimony from Mr. Harris's sister and from Father regarding when Father learned of Mother's marriage to Mr. Harris.

On January 10, 2012, the trial court entered three orders resolving the post-trial motions. In the first order, the court denied most of the relief requested in Mother's motion to alter or amend, but ordered the parties to confer regarding Father's residential days with the child. In a second order, regarding attorney fees, the court found the amount proposed by Mother's attorney not to be reasonable "due to the unique circumstances of this lawsuit." The court ordered an award in the amount of $10,000 for Mother's attorney fees.

In its third order, the court, sua sponte, amended the order of August 31, 2011 based upon its finding that the order "was incorrect where it asserted that the agreement between the parties regarding payment of educational expenses that was incorporated into the final decree of divorce was contractual in nature and could not be modified by the Court." Because Mother did not mention the November 2010 agreed order at the final hearing in June 2011, the court concluded that she had abandoned the agreement. The court noted that the child support guidelines, as amended since the parties' divorce, allowed the court to add extraordinary expenses if appropriate considering the parties' financial abilities and the child's lifestyle if the parties were living together. *See* Tenn. Comp. R. & Regs. § 1240-2-4-.07(2)(d). The expenses "may be, but are not required to be, divided between the parents according to each parent's income." Based on the circumstances of the case, including the financial contributions of the maternal grandmother and "Mother's apparent attempt to keep this information from the Father and the Court," the court ordered that Father continue to pay half of the child's tuition "plus an additional $150.00 per month in child support as his share of educational expenses related to the private school education of the minor child." Furthermore, the court ordered that "this aspect of child support shall not be retroactive and shall instead begin with the February, 2012 child support payment."

Mother filed a new petition to modify parenting time on February 1, 2012.

Mother filed a notice of appeal from the court's January 10, 2012 orders on February 9, 2012. On February 10, 2012, Father filed a motion to disqualify counsel asking the court to disqualify Mr. Harris from representing Mother "in any matter related to the modification of the parties' permanent parenting plan." On the same day, Father filed a motion to allow him to pay the attorney fees awarded to Mother into the clerk of court's office. On March

19, 2012, the trial court entered an order on Father's motion to disqualify counsel, ruling that "Mr. Harris shall be disqualified from representing [Mother] in any pending or new matters in this case." On March 20, 2012, the trial court granted Father's motion to pay attorney fees into the clerk's office, citing a pending case involving Mother's attorney's previous law firm.

*Issues on appeal*

Mother raises numerous issues on appeal:

(1) Whether the trial court erred in imposing a trust on the funds gifted to the child by her grandmother.

(2) Whether the trial court erred by reconsidering its previous decision that the parties' agreement in the permanent parenting plan regarding tuition and school expenses was contractual and could not be amended.

(3) Whether the trial court erred in failing to award Mother the full amount of attorney fees requested.

(4) Whether the trial court erred in exercising jurisdiction over Father's motion to disqualify counsel and motion to pay attorney fees into the clerk of court's office. And whether, if the court had jurisdiction to hear these two motions, the court's rulings were erroneous.

(5) Whether the trial court erred in denying Mother's motion to alter or amend and in failing to modify the calculation of the back child support due and owing since the petition was filed.

ANALYSIS

(1) Trust account

Mother argues that the trial court erred in requiring her to establish a trust account for all gifts from the maternal grandparent to the child, and we are inclined to agree.

In the context of making a child support award, a trial court has some discretion as to whether and how much child support should be placed in a trust or restricted account for the benefit of the child. *See Bryan v. Leach*, 85 S.W.3d 136, 152 (Tenn. Ct. App. 2001); Tenn. Comp. R. & Regs. § 1240-2-4-.07(2)(g)(iii) (regarding parents with high income). The present matter came before the court on Mother's amended motion to increase Father's child support. The only issues presented to the court were whether Father's income justified an increase in child support and whether Father should be required to pay a greater share of the child's education-related expenses. Father did not petition to have a trust account established or put on any evidence to support the need for such an account.

In ordering Mother to establish a trust account for gifts from the maternal grandmother to the child, the court required a court order for any use of the money during the child's minority. The only stated justification for the trust requirement was as follows: "[T]he problem I've always had whenever children have money on deposit, parents tend to want to use that money to pay things that really, as a parent, they should be paying." The court also stated, "I don't want to impute to your client [Mother] any bad motive, or anything, I think she's done the right thing . . . ." While this court agrees with Father that a trial court has the authority to establish a trust where circumstances so require, we find no evidence of any such circumstances in this case.

Father relies on the language of Tenn. Code Ann. § 34-1-102(a): "Funds of a minor held by a guardian shall not be expended to relieve or minimize the obligation of the parent or parents to support the minor." Mother is accountable for the funds given to the child by the maternal grandmother and must comply with the statutory prohibition. There is no evidence in this case that Mother had done otherwise. Evidence that Mother placed child's funds in an account along with other funds is not sufficient to show misuse of those funds. The case of *Allison v. Allison*, 638 S.W.2d 394, 396 (Tenn. Ct. App. 1982), cited by Father, is distinguishable because it involved evidence that the father had withdrawn funds from an account owned by his minor child. We, therefore, conclude that the trial court erred in going outside the issues before it and requiring Mother to establish a trust account without any request or justification for such a remedy.

(2) Reconsideration of decision regarding school tuition and expenses

Mother next argues that the trial court erred in sua sponte altering its August 31, 2011 order regarding the modifiability of the permanent parenting plan terms regarding tuition and school expenses. Mother asserts that the court's January 10, 2012 order "flies in the face of the negotiated agreement memorialized by the Agreed Order entered November 30, 2010." Based upon this reasoning, Mother requests judgment against Father for a prorated share of the tuition and of the education-related expenses.

In an attempt to clarify the issue, we begin by reviewing the relevant orders and procedural history: After the filing of Mother's petition to modify, the parties engaged in discovery. Father filed a motion for a protective order with respect to certain requests for production of documents served upon him by Mother. One of the contested requests for production was number 10, in which Mother requested that Father produce documentation "evidencing any educational expense and/or any extracurricular expense . . . which you have incurred by or on behalf of" the parties' minor child since October 2006 other than Father's payment of one-half of the private school tuition. On June 9, 2010, the trial court ruled on Father's motion for a protective order. The following portion of the court's ruling is

pertinent here:

> The Father has represented to the Court that he makes no claim for offsets of any expenses he has paid for the benefit of the minor child against child support, there being no legal basis to do so and, therefore, the Mother has withdrawn Request for Production of Documents Nos. 7, 9, 10, 11, 12 and 13.

Father also served requests for production of documents on Mother and, later, a motion to compel discovery. After a hearing in early November 2010, the trial court entered an order compelling discovery on November 30, 2010. In its order, the court memorialized agreements announced by the parties, including the following:

> That in response to the Father's request for Production of Documents #12, and Motion to Compel, the Mother has previously provided documents reflecting all out-of-pocket expenses related to incidental private school expenses for uniforms, books and school-related extra-curricular activities for the 2009-2010 school year and shall provide such additional out-of-pocket expenses for the 2010-2011 school year that she requests [the] Court to consider, and the Father may secure tuition-related expenses directly from the private school. *The parties have agreed that this is an appropriate case for the parties' child to attend private school and based on the parties' respective incomes, the Court shall prorate private-school related tuition, fees, cost of books, uniforms and school-related extracurricular activities.*

> That the parties have stipulated that the Petitioner/Mother seeks no upward deviation for extraordinary medical expenses requested under Request for Production of Documents #11 nor extraordinary extra-curricular activities under Request for Production of Documents #13 nor any upward deviation related to the number of days of parenting time that the Father exercises as requested under Interrogatory #8. As a result, responses to the foregoing discovery requests are moot, and the Mother is not required to provide any additional responses related thereto.
> . . .
> The Plaintiff/Mother's oral motion renewing her request to require the Respondent/Father to produce documentation evidencing expenses related to the support, education, clothing, gifts or furnishings of his home for the benefit of the minor child, being Mother's Request for Production of Documents #'s 9, 10, 11, 12 and 13, is respectfully denied.

(Emphasis added).

-8-

At the beginning of the June 2011 trial, counsel for Mother waived an opening statement but made the following clarification to the court:

> MR. HARRIS [Mother's counsel]: . . . As Your Honor will recall, I propounded certain written discovery to the respondent, David Carter, addressing himself with particularity as to the financial contributions that he made to or on behalf of the minor child while she was with him when he was exercising parenting time. I did so on the basis to demonstrate that what he was not doing warranted a deviation in the guidelines under the manner in which that they are calculated. Your Honor ruled that that was not legitimate discovery and that I was not entitled to make those inquiries. *Within an order that was entered by Your Honor in November of 2010, actually it was a motion to compel discovery, there is a passage in there that it is stipulated that there is no request for a deviation from the guidelines. That is absolutely correct, as long as it takes into consideration Your Honor's previous ruling that the inquiries that I had made were not deemed legitimate and Your Honor sustained the objections to those inquiries. And that having been said, I state to the Court today that we are not asking for a deviation in light of Your Honor's ruling.* And I just wanted to make certain that that was clear for purposes if and in the unlikely event this matter is appealed.

(Emphasis added). The trial court then read over the November 30, 2010 order and the hearing proceeded. In his opening statement, counsel for Father argued that the parties' agreement in the original parenting plan that Father would pay one-half of the private school tuition could not be modified to require him to also pay for school-related expenses.

During Mother's testimony, her counsel began to ask questions regarding expenses associated with the child's private schooling. Father's counsel objected based upon the language of the permanent parenting plan, which referenced only tuition. The following exchange occurred:

> THE COURT: Okay. So in the context, you tell me if I'm wrong, you're not seeking an upward deviation, correct, based upon the representations of that agreed order, correct?
> MR. HARRIS: Correct.
> THE COURT: Okay. So tell me how this is relevant because I believe what [Father's counsel]'s saying is correct.
> MR. HARRIS: Because at the time that the final decree of divorce, the permanent parenting plan order was negotiated there was no uniform policies at CPA [the private school].

THE COURT: That doesn't matter. If that was going to be a possible consideration for future increase in obligations, it should have been specified that that was a consideration.

In the ensuing discussion between the court and Mother's counsel, counsel never mentioned the November 2010 order's language regarding an agreement to prorate tuition and school expenses. The court ruled against Mother, and Mother's counsel then made an offer of proof regarding Mother's expenses associated with the child's private schooling.

In the order entered on August 31, 2011, the court denied Mother's request to require Father to pay certain education-related expenses, reasoning that the parties' agreement in the permanent parenting plan incorporated into the final divorce decree was "contractual and may not now be amended." On September 30, 2011, Mother filed a motion to alter or amend the August 31, 2011 order. In order to resolve matters raised in the post-trial motions, the court entered three orders on January 10, 2012.

In one of these three orders, the trial court sua sponte amended its August 31, 2011 order as follows:

[T]hat portion of the August 31, 2011, Order was incorrect where it asserted that the agreement between the parties regarding payment of educational expenses that was incorporated into the final decree of divorce was contractual in nature and could not be modified by the Court.[1] This in incorrect for two reasons. First, there is an Agreed Order entered November 30, 2010, wherein the parties agreed, through their attorney at the time that "this is an appropriate case for the parties' child to attend private school and based upon the parties' respective incomes, the Court shall prorate private-school related tuition, fees, cost of books, uniforms and school-related extra-curricular activities." Secondly, since the parties divorce on October 3, 2006, there have been amendments to the Rules of the Child Support Guidelines (Rule 1240-2-4-.07(d) "Extraordinary Expenses"). The difference in the foregoing two is that the private agreed order states "shall" and the Rules of the child support guidelines states "may."

At the final hearing in June, 2011, Mr. Robinson no longer represented Mr.

---

[1]An agreement between parties regarding the support of a minor child "is within the legal obligation to support the minor child and, therefore, is subject to court modification once the agreement is merged into a divorce decree." *Jones v. Jones*, No. M2009-01512-COA-R3-CV, 2010 WL 2025403, at *4 (Tenn. Ct. App. May 20, 2010) (quoting *Allison v. Hagan*, 211 S.W.3d 255, 260 (Tenn. Ct. App. 2006)).

-10-

Carter and no mention was made by either [attorney] of the agreement embodied in the Order of November 30, 2010. Accordingly, this Court is of the opinion that the Mother has abandoned enforcement of the language of the agreed order of November 30, 2010.

The next issue is whether the Court shall order an upward deviation from the child support guidelines by Ordering the Father to pay more of the extraordinary expenses of the minor child's private tuition. The guidelines provide that the Court may add extraordinary educational expenses if it is appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and child were living together. These expenses may be, but are not required to be, divided between the parents according to each parent's income.

The facts of this case, including the maternal grandmother's financial involvement in paying expenses for the minor child (and the Mother's apparent attempt to keep this information from the Father and the Court), leads this Court to the conclusion that Father shall continue to pay a one half share of the minor child's tuition at CPA, plus an additional $150.00 per month in child support as his share of educational expenses related to the private school education of the minor child at CPA, it being the Court's finding that this is an equitable sum given the facts (and history) of the parties and of this case.

The issue before the trial court here was whether to modify Father's child support obligation with respect to private school tuition and expenses. Mother asserts that the agreement incorporated into the trial court's discovery order entered in November 2010 was binding on the court and required the court to pro-rate the tuition and education expenses according to the parties' relative incomes. We cannot agree.

At the time of the original hearing in June 2011, Mother's counsel referenced the November 2010 order's provisions as to relevance of certain evidence, but made no mention of the parties' agreement memorialized in that order regarding proration of school tuition and expenses. Mother's argument on appeal that it would have been "meaningless" to bring that agreement to the court's attention does not hold water. Father was arguing that the permanent parenting plan was binding and could not be modified, and Mother responded based solely upon the meaning of that plan. Even before the court accepted Father's argument, Mother did not mention the agreement in the November 2010 order. Moreover, several times during the hearing, Mother's counsel agreed with the court's statements that Mother was not seeking an upward deviation in child support–although the court's previous discovery rulings and the November 2010 order did not preclude *all* claims for upward deviation. In light of the record regarding these proceedings, the evidence does not

preponderate against the trial court's finding that Mother abandoned the previous agreement. Furthermore, with respect to the issue of tuition payments, that agreement was based upon the erroneous assumption that circumstances had changed in that the maternal grandmother would no longer be paying half of the tuition.

Pursuant to Tenn. R. Civ. P. 54.02, a non-final order "is subject to revision at any time before the entry of the judgment . . . ." It is within the discretion of the trial court to revise or amend such an order. *See Harris v. Chern*, 33 S.W.3d 741, 746 (Tenn. 2000). At the time when it amended the August 2011 order, the trial court was aware of the November 2010 agreement and took note of the amended child support guidelines allowing a deviation from the child support guidelines for extraordinary educational expenses. *See* Tenn. Comp. R. & Regs. §§ 1240-2-4-.03(6)(b)(5)(ii), 1240-2-4-.07(2)(d)(1). In light of all of the evidence before the trial court, we cannot say that the court abused its discretion in declining to modify the permanent parenting plan with regard to tuition but requiring Father to pay an additional $150 per month for education-related expenses.

(3) Attorney fees

Mother argues that the trial court erred in declining to award the full amount of attorney fees she requested.

The award of attorney fees is within the trial court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011). In reviewing the award, we look at the evidence in the light most favorable to the trial court's decision. *Id.* Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). In this case, there is no dispute that an award of attorney fees is authorized by Tenn. Code Ann. § 36-5-103(c).

Contrary to Mother's contention, we find no abuse of discretion in the trial court's decision regarding attorney fees. Mother requested a total of $27,480 in attorney fees for her attorney, Mr. Harris, who married Mother soon after the trial on her petition to modify child support. In awarding Mother $10,000 in attorney fees, the trial court found that Mother "was less than forthcoming regarding the sums of money that her mother (grandmother) contributed in payment or in gift, to her and her daughter." The court also noted:

> [I]n view of Mother's marriage to her attorney and since Mother testified that she has had an agreement with Mr. Harris since the Petition herein was filed to not pay Mr. Harris anything until this Court decided the issue of an award

of attorney's fees, this Court doubts that Mother shall pay Mr. Harris any
attorney's fees in this matter regardless what this Court awards.

The court concluded that the amount requested by Mother's attorney was not a reasonable award and, "due to the unique circumstances of this lawsuit," awarded a lesser amount.[2] We find no error here.

(4) Motions regarding disqualification of counsel and deposit of attorney fees

The trial court entered its orders ruling on the post-trial motions on January 10, 2012. On February 9, 2012, Mother filed a timely notice of appeal. The next day, February 10, 2012, Father filed two motions: a motion to disqualify Mother's counsel and a motion to allow Father to pay the court-ordered attorney fee award into the clerk of court. Mother argues on appeal that the trial court lacked jurisdiction to rule on these motions.

Under Tenn. R. App. P. 4(a), a party must file a notice of appeal within 30 days of the entry of the judgment being appealed. Once the notice of appeal has been filed, the trial court loses its authority to act without leave from the appellate court. *First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001). Perfecting of the appeal vests jurisdiction in the appellate court. *Id.; see also Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421, 425 (Tenn. Ct. App. 2007). The filing of an appeal does not, however, "prevent the trial court from acting with regard to ancillary matters relating to the enforcement or collection of its judgment." *First Am.*, 59 S.W.3d at 141 n.8.

With these principles in mind, we examine each of the two motions at issue. Father filed a motion to disqualify Mr. Harris "in any matter related to the modification of the parties' permanent parenting plan." In his supporting memorandum, Father referenced the new petition to modify parenting time filed by Mother on February 1, 2012. Because this motion related only to the new petition to modify parenting time, and not to the petition to modify at issue in this appeal, the trial court had jurisdiction to rule on the motion. We decline to consider the merits of the trial court's ruling disqualifying Mr. Harris in "any pending or new matters" because those matters are not part of this appeal.

Father also filed a motion for permission to pay the attorney fees ordered by the trial court into the clerk of court's office. The basis for this motion was pending litigation

---

[2]Mother correctly points out that, contrary to a statement in its order, the trial court did not find Mother underemployed. Nevertheless, Father was partially successful in that Mother was not awarded all of the tuition and educational expenses she requested.

between Mr. Harris and his former law firm. Father argued that Mr. Harris's former law firm might be entitled to receive some of the attorney fees awarded by the trial court. We consider this motion to be related to the enforcement or collection of the attorney fee award and, therefore, a matter within the jurisdiction of the trial court. Furthermore, we find no error in the trial court's decision ordering Father to pay the awarded attorney fees into the court clerk's office.

(5) Mother's motion to alter or amend regarding calculation of back child support

The final argument raised by Mother is that the trial court erred in denying her motion to alter or amend on the issue of the calculation of back child support owed.

We review a trial court's denial of a Rule 59 motion to alter or amend a judgment under an abuse of discretion standard. *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003). An abuse of discretion occurs when a trial court "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Caldwell*, 250 S.W.3d at 869 (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

In its August 31, 2011 order, the trial court held that Father's child support obligation would be modified to $1,565.00 per month based upon "a 4 year average income of the respective parties for the calendar years 2007 through 2010." The court went on to make this support retroactive to July 2009 (when Mother filed her petition to modify). In her motion to alter or amend, Mother argued that the back support due for the period from July 2009 and June 2011 should be "modified and recalculated based upon a three year average of the incomes of the respective parties for the calendar years 2006, 2007 and 2008 for that which should have been paid for the calendar year 2009 and utilizing a four year average of the calendar years for 2006, 2007, 2008 and 2009 for that which should have been paid during the calendar year 2010."[3] Noting a lack of legal support for the calculation method urged by Mother and the absence of a showing of mistake, surprise, inadvertence, or neglect, the trial court denied Mother's motion.

A trial court has broad discretion in setting the amount of back child support. *State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001). The child support guidelines do not establish how fluctuating income is to be averaged. *Hanselman v. Hanselman*, M1998-00919-COA-R3-CV, 2001 WL 252792, at *3 (Tenn. Ct. App. Mar. 15, 2001). Thus, "it is left to the courts to determine on a case-by-case basis the most appropriate way to average fluctuating income." *Id.* While the method of calculation

_____

[3]Mother calculates that this change would increase the amount due from $14,376 to $16,002.

-14-

suggested by Mother appears to be a reasonable option, we find no evidence that the method employed by the trial court was unreasonable or erroneous. We find no abuse of discretion in the trial court's ruling.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the trial court with respect to the establishment of a trust account. In all other respects, we affirm the trial court's judgment. Costs of appeal are assessed equally against Mother and Father, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

.